JASON S. LEIDERMAN, SBN 203336
jay@criminal-lawyer.me
ERIC J. LINDGREN, SBN 288542
eric@criminal-lawyer.me
LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

TOR EKELAND, PRO HAC VICE
tor@torekeland.com
TOR EKELAND, P.C.
155 Water Street
Brooklyn, NY 11201
Tel: 718-285-9343
Fax: 718-504-5417

Attorneys for Defendant
MATTHEW KEYS

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES, | ) Case No.: 13-CR-00082 KJM |
| | ) |
| | ) **REPLY TO OPPOSITION TO MOTION TO** |
| | ) **SUPPRESS** |
| Plaintiff, | ) |
| | ) |
| v. | ) Date:       January 29, 2014 |
| | ) Time:       9:00 am |
| MATTHEW KEYS, | ) Place:       Courtroom 3 |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

**INTRODUCTION**

The warrant in this case authorized a virtually limitless seizure of Defendant Matthew Keys' ("Defendant" or "Mr. Keys") electronic media.  In drafting and executing the warrant, the government ignored the dangers inherent in computer searches and seizures.  It ignored the Ninth Circuit case law addressing those dangers.  And it relied on stale information to engineer probable cause that Mr. Keys retained information on his personal computing equipment relevant to an isolated event which occurred nearly two years before the warrant was executed.  A thoughtful review reveals that the warrant is so overbroad and so lacking in probable cause that no officer could have reasonably relied on it.

At the same time the government executed the warrant, it obtained written and recorded statements from Mr. Keys.  These statements were obtained as a result of the execution of the search warrant, and are inadmissible as poisonous fruit.  They were also obtained while Mr. Keys was under the influence of a prescription drug, rendering his *Miranda* wavier unreliable and invalid.

**STATEMENT OF FACTS**

Defendant adopts and incorporates by reference the facts recounted in Defendant's Motion to Suppress and in the government's Opposition.  (*See* Def.'s Mot. to Suppress ("Mot."), Docket # ("Dkt #") 23 at 1-10; Gov't's Opp. to Def.'s Motion to Suppress ("Opp."), Dkt # 24 at 8-16.)

**ARGUMENT**

**I.      THE SEARCH WARRANT WAS UNCONSTITUTIONALLY OVERBROAD.**

The search warrant in this case is the modern equivalent of a general warrant.  It authorized a breathtakingly broad seizure of every conceivable kind of hardware and software.  Indeed, it reads more like an information hoarder's wish list than a particularized warrant, authorizing seizure of "Any computer equipment or digital devices . . . capable of being used to commit the Specified Federal Offenses"; any "floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and cell phones"; any "documentation, operating logs, and reference manuals"; any "applications, utility programs, compilers, interpreters, and other software"; any "physical keys encryption devices, dongles," "passwords, password files, test keys, encryption codes," "records, documents, programs, applications, or materials . . . stored in any form . . . on any

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

computer or digital device"; "software that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software"; and much more.  (*See* Aff. of Special Agent Gabriel Andrews ("Aff."), Dkt # 23-1 ¶ 38.)  In short, the warrant authorized the wholesale seizure of all of Mr. Keys' electronic media.  Under prevailing law, the warrant is so facially overbroad that its fruits are inadmissible.

The government begins its opposition to Mr. Keys' overbreadth argument by attacking a straw man, claiming that the "crux" of his argument is the government's failure to follow the guidelines in Chief Judge Kozinski's concurrence in *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162 ("*CDT III*") (en banc).  (Opp. at 16.)  This is not true.  While Defendant's Motion does point out the government's utter failure to follow Judge Kozinski's guidelines, it does so in anticipation of the government's claim of "good faith," *see infra*, Part III, not as a primary basis for suppression.

Instead, Defendant relies primarily on the *CDT III* court's per curiam opinion, which explicitly endorses the rules set forth in *United States v. Tamura*, 694 F.2d 591 (9th Cir 1982).  (*See* Mot. at 13-14.)  That opinion garnered votes from eight judges; it is binding law.  And as an en banc opinion, it takes precedence over *United States v. Schesso*, 730 F.3d 1040 (9th Cir 2013),[1] upon which the government's Opposition heavily relies.  (Opp. at 18-19.)

Nor is *CDT III*, as the government suggests, narrowly concerned with "preventing the government from overseizing data and then using the process of identifying and segregating seizable data 'to bring constitutionally protected data into . . . plain view.'"  *Schesso*, 730 F.3d at 1047.  Rather, a fair reading of *CDT III* reveals that the court is concerned with the very real risk that every warrant to search for digital information becomes, in practice, a general warrant.  *See CDT III*, 621 F.3d at 1170-71 (computer searches create a "powerful incentive to seize more rather than less").  That risk is readily apparent in this case: agents authored and executed a warrant authorizing the wholesale seizure of every conceivable kind of electronic media in Mr. Keys' control.

---

[1] The *Schesso* panel included the author of *CDT III*'s only full dissent, likely contributing to its lukewarm treatment of *CDT III*.  *See generally*, *Schesso*, 730 F.3d 1040; *CDT III*, 621 F.3d at 1192-96 (Ikuta, J., dissenting).

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

In order to address the risk to the Fourth Amendment inherent in computer searches, *CDT III*, *Tamura*, and *United States v. Hill*, 459 F.3d 966 (9th Cir. 2006), provide a number of rules that have the force of binding precedent.  As laid out in Defendant's Motion, *Hill* requires the government to provide a factual basis for wholesale seizure; boilerplate reciting the dangers of data destruction and booby-traps are not sufficient.  *Hill*, 459 F.3d at 975.  And *Tamura*, endorsed by the *CDT III* majority as a "workable framework . . . to apply to the daunting realities of electronic searches," forbids wholesale removal unless "no other practical alternative exists."  *Tamura*, 694 F.2d at 596.  If wholesale removal is necessary, the government must seal and hold the data pending approval of a neutral, detached magistrate.  *Id.* at 595-96.  Finally, the government must return any out-of-scope documents without "unnecessary delay."  *Id.* at 597.

Here, the government followed none of these safeguards.  The affidavit contains no factual basis to assert that no practical alternative to on-site copying exists.  Although its boilerplate identifies general concerns about data encryption and destruction, it makes no effort to show that Mr. Keys' data was encrypted or booby-trapped.  The wholesale seizure and segregation of data was unaccompanied by judicial oversight.  And the government made no effort to return irrelevant data promptly.  Its failure to heed the concerns about blanket seizures expressed in *CDT III*, *Hill*, and *Tamura* render the search warrant unconstitutionally overbroad.

## II.   THE WARRANT IS UNSUPPORTED BY PROBABLE CAUSE THAT MR. KEYS' HOME COMPUTER EQUIPMENT WOULD CONTAIN ANY EVIDENCE OF THE TARGET OFFENSES.

The affidavit's assertion that Mr. Keys would retain evidence of criminal activity on his personal computer for over 20 months is not supported by the facts.  Probable cause, evaluated under the "totality of the circumstances," *Illinois v. Gates*, 462 U.S. 213, 230 (1983), requires that a warrant "be based on facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."  *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997); *see also United States v. Gann*, 732 F.2d 714, 722 (9th Cir. 1984) (probable cause requires a "sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises").  For at

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

least five reasons, the affidavit lacked probable cause to believe Mr. Keys had any evidence of the target offenses on his personal computing equipment when the warrant was executed.

First, there is no reason to believe Mr. Keys was engaged in any ongoing criminal activity. All of the criminal conduct alleged occurred in December 2010, and the government can point to no facts indicating a "continuing pattern" or an "ongoing criminal business." *Gann*, 732 F.2d at 722; *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991).

Second, the freshest "evidence" to which the government points, (see Opp. at 20), is not evidence of the offense charged, nor does it support the conclusion that Mr. Keys kept any evidence of the alleged crimes. The screenshot posted to www.producermatthew.com on March 6, 2012 and described in ¶ 21 of the affidavit shows a small portion of a conversation in which "Kayla" claimed to have obtained data from the CERN research facility. It does not reference the Los Angeles Times edit or anything else related to the criminal conduct charged here. Moreover, the July 6, 2012 tweet described in ¶ 28 of the affidavit merely affirms a passage in *We Are Anonymous* by Parmy Olson which names Mr. Keys as a source. That passage states Mr. Keys provided the source material "in early 2011." It provides no basis to believe Mr. Keys retained it a year and a half later. This "evidence" just confirms that Mr. Keys' interest in Anonymous was primarily a journalistic interest. It does not support the government's conclusion that a search of Mr. Keys' computer systems would uncover any evidence of wrongdoing.

Third, the affidavit obscures the differences between a web server and a personal computer. It supports only the proposition that Mr. Keys' website, www.producermatthew.com, held the screenshot. It does not provide cause to believe that relevant information would be found on Mr. Keys' personal computing equipment. Perhaps recognizing this problem, the affidavit asserts that Mr. Keys "actively monitors the Internet and updates his website from his residence." (Aff. ¶ 36.) But this assertion simply does not bridge the gap. As a matter of common sense, the presence of files on a web server does not mean those files will also reside on a personal computer, even if controlled by the same person.

Fourth, contrary to the government's position, the difference between chat logs and screenshots is material. Recording chat logs, also known as "logging," is a form of systematic, continuous record-keeping. A chat user who is logging will record to his computer *all* chats as long as logging is enabled.

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

1    Evidence that a user is logging might, in some circumstances, support the proposition that the user

2    possesses logs of other conversations.  A screenshot, however, merely records a single moment in time.

3    Taking a screenshot is not systematic or continuous; rather it is sporadic, an independent event.  It is not

4    reasonable to conclude, based on posting a single screenshot—one whose content is not even germane to

5    the charged conduct—to his website, that Mr. Keys held on to any information regarding the Los

6    Angeles Times edit.  The affidavit's assertion that Mr. Keys had such evidence, "including chat logs,"

7    (Aff.¶ 36), is foundationless.

8          Fifth, and perhaps most importantly, this is not a child pornography prosecution.  Computer

9    search case law in this circuit—and in the government's Opposition—is dominated by child

10   pornography cases.  *See, e.g.*, *Schesso*, 730 F.3d at 1044 n.1 (defendant was charged with child molestation

11   in addition to the child pornography offenses), *United States v. Krupa*, 658 F.3d 1174 (9th Cir. 2011);

12   *Brobst*, 558 F.3d 982 (9th Cir. 2009); *Lacy*, 119 F.3d 742; *United States v. Seiver*, 692 F.3d 774 (7th Cir.

13   2012); *United States v. Vosburgh*, 602 F.3d 512 (3d Cir. 2010).  The courts deciding these cases have

14   made clear that probable cause should be considered in "light of the 'nature of the criminal activity and

15   property sought.'"  *Schesso*, 730 F.3d at 1047 (quoting *Lacy*, 119 F.3d at 745).  And they have

16   consistently recognized aspects of child pornography cases simply not present in a case like this.  The

17   affidavit in *Schesso* "explained that individuals who possess, distribute, or trade in child pornography

18   'rarely, if ever, dispose of sexually explicit images of children' because these images are treated as

19   'prized possessions.'"  *Id.*; *see also id.* at 1050 ("The affidavit included sufficient evidence connecting

20   [defendant] to the profile of a child pornography collector . . . .").  Likewise, the search upheld in *Lacy*

21   relied on the affiant's statement that "collectors and distributors of child pornography value their

22   sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods'

23   in a secure place, typically in their homes."  *Lacy*, 119 F.3d at 746; *see also United States v. Hay*, 231

24   F.3d 630 (9th Cir. 2000) (using same "rarely, if ever" language).  Here, in contrast, the government can

25   point only to (1) Agent Andrews' opinion that Mr. Keys was proud of his journalism, (2) the

26   foundationless generalization that people "proficient with computers . . . retain their computers and

27   attendant digital media."  (Aff. ¶ 36.)

28

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

In short, the government relies on opinion, speculation, and generalization to justify the 22-month delay between the alleged crime and the warrant application.  A review of the facts, however, reveals insufficient cause to justify a search and seizure of Mr. Keys' personal computing equipment in October 2012.  The fruits must be suppressed.

**III.**   **THE WARRANT WAS SO FACIALLY OVERBROAD AND SO LACKING IN CAUSE TO BELIEVE MR. KEYS' PERSONAL EQUIPMENT WOULD CONTAIN EVIDENCE THAT *LEON*'S GOOD FAITH EXCEPTION DOES NOT APPLY.**

The government argues that even if the warrant is deficient, the court should deny suppression because the agents acted in "good faith."  *United States v. Leon*, 468 U.S. 897 (1984).  When the government relies on *Leon*'s good faith exception to the exclusionary rule, it "bears the burden of proving that officers relied on the search warrant 'in an objectively reasonable manner.'"  *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 706 (9th Cir. 2009) (quoting *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007)).  Where a warrant is "so overbroad as to be facially deficient," *United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995), or "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon*, 468 U.S. at 923, however, the good faith exception does not work to admit the seized evidence.

Here, as explained in Part I, the warrant authorized an incredibly broad seizure of what amounted to every bit of hardware and software under Mr. Keys' control.  The affidavit, however, provided no facts to justify the seizure of "floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and cell phones."  It provided no substantial justification for believing Mr. Keys possessed or used any "utility programs, compilers, interpreters, and other software" or "physical keys encryption devices, dongles," or "software that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software."  Instead, the warrant is simply a laundry list of all conceivable electronic media.  *Cf. Kow*, 58 F.3d at 430 (suppressing evidence seized pursuant to a warrant affidavit which failed to "justify the wholesale seizure of business records," despite the government's claim of good faith).   Viewed objectively, the warrant was so overbroad that *Leon*'s good faith exception does not apply.

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

Furthermore, as argued in Part II, the warrant lacked any reasonable basis to believe Mr. Keys' personal computing equipment would contain evidence of a 22-month-old crime. The affidavit's claims that Mr. Keys would retain anything relevant to the target offenses after such a long period of time was supported only by subjective opinion, speculation, and generalization. Viewed objectively, the affidavit totally lacks a *factual* basis for believing such a stale search would turn up anything relevant.

Finally, the government's utter failure to heed the guidance of *CDT III* undermines its claims of good faith. Recognizing the difficulties inherent in defining the scope of computer searches, Judge Kozinski offered the government a well-defined "safe harbor." *CDT III*, 621 F.3d 1162, 1178 (Kozinski, C.J., concurring). Rather than taking refuge in the safe harbor, however, the government has chosen to brave the open sea. In some cases as an official policy,[2] it has continued to draft extremely broad warrant applications without regard for the danger computer searches and seizures pose to the Fourth Amendment's prohibition on general warrants. Such behavior indicates a concerted effort to push back against courts asserting the Fourth Amendment, not good faith.

In sum, the warrant was both so overbroad and so lacking in objectively reasonable probable cause that the good faith exception does not apply here. The government's failure to heed any of Judge Kozinski's guidelines further undermines any claim of good faith. The evidence should be suppressed.

## IV. THE GOVERNMENT BEARS THE BURDEN OF PROVING MR. KEYS' STATEMENTS WOULD HAVE BEEN OBTAINED INDEPENDENT OF THE UNLAWFUL SEARCH AND SEIZURE.

The government argues in its Opposition that the written and recorded statements the FBI obtained during its interview of Mr. Keys were obtained independently of the execution of the search warrant. The government bears the burden of proof on this point. *See United States v. Shetler*, 665 F.3d

---

[2] The *Schesso* panel explained one instance of the government's systematic resistance to Judge Kozinski's guidelines, which occurred during the brief period those guidelines were Ninth Circuit law:

> After *CDT II*, [579 F.3d 989 (9th Cir. 2009)], magistrate judges in the Western District of Washington took steps to implement [Kozinski's] protocol, requiring the protocol for all warrants authorizing searches of electronically stored information. Because the government disagreed with this approach, ICE directed its agents not to agree to a waiver of plain view, for example, and adopted a practice of submitting its warrant applications to state judges rather than through the federal system. [¶] Approximately a year later, the en banc court issued a new, amended opinion.

*Schesso*, 730 F.3d at 1048-49.

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

1   1150, 1157 (9th Cir. 2011) (quoting *United States v. Patzer*, 277 F.3d 1080, 1086 (9th Cir. 2002)).  The

2   government insists the court apply *Shetler*'s three-factor test, which requires consideration of "(1) the

3   temporal proximity of the search to the confession; (2) the presence of intervening circumstances; and

4   (3) the purpose and flagrancy of the official conduct."  *Shetler*, 665 F.3d at 1159.  Given that the

5   *Miranda* interview was conducted simultaneously with the unlawful search and seizure, the first two

6   factors heavily favor Mr. Keys.  The government cannot break the "causal chain" linking the unlawful

7   search and seizure of Mr. Keys' electronic media and his statements to investigators.  *United States v.*

8   *$186,416.00 in U.S. Currency*, 590 F.3d 942, 953 (9th Cir. 2010) (quoting *Brown v. Illinois*, 422 U.S.

9   590, 597 (1975)).  The statements are fruit of the poisonous tree and must be suppressed.

10  **V.    MR. KEYS' *MIRANDA* WAIVER WAS NOT VOLUNTARY, KNOWING AND**

11  **INTELLIGENT.**

12  **A.    MR. KEYS WAS PRESCRIBED TRAZODONE TO TREAT INSOMNIA.**

13      The government begins its Opposition to Mr. Keys' argument that he did not validly waive his

14  *Miranda* rights by claiming that Trazodone "may have actually improved Mr. Keys' mental functioning

15  and rational faculties…"  (Opp. at 27-21.)  To support this assertion, the government relies on a

16  description provided in response to a question posed on a National Institute of Health (NIH) website that

17  states "Trazodone is used to treat depression," and is "in a class of medications called serotonin

18  modulators."  *Id.*  The government goes on to admit that NIH recognizes that Trazodone is also

19  "sometimes used to treat insomnia, schizophrenia, and anxiety."  *Id.*

20      Here, Mr. Keys was prescribed Trazodone for insomnia.  (*See* Decl. of Matthew Keys, Dkt # 23-

21  6 ¶ 4.)  Furthermore, as side effects of Trazodone, the NIH lists, inter alia, ". . . weakness or tiredness

22  . . . nervousness [and] decreased ability to concentrate or remember things . . . ."  MedlinePlus, A

23  service of the U.S. National Library of Medicine, National Institutes of Health, *Trazodone* (Jan. 8,

24  2014), http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681038.html.  Mr. Keys consumed 100mg

25  of Trazodone approximately five hours before federal agents executed a search warrant for his

26  apartment.  After six hours, half of the drug would remain active in the body.  (Decl. of Dr. Barry M.

27  Cogan, Dkt # 23-8.)  Considering the side effects of Trazodone listed by the NIH, it does not follow that

28  it could have improved his mental functioning and rational faculties.

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

Shortly before 6 a.m. on October 4, 2012, Mr. Keys was abruptly woken up out of a drug-induced sleep by a group of armed federal agents, and was still under the influence of Trazodone during the interrogation.  Therefore his statements were made involuntarily and should be suppressed.

**B.**     **THE AUDIO RECORDING AND TRANSCRIPT OF MR. KEYS' STATEMENTS TO THE FBI PROVE THAT HE DID NOT KNOWINGLY, INTELLIGENTLY, OR VOLUNTARILY WAIVE HIS *MIRANDA* RIGHTS.**

In support of its position that Mr. Keys knowingly, intelligently, and voluntarily waived his *Miranda* rights, the government incorrectly relies on several cases where the court, finding a valid *Miranda* waiver occurred, admitted statements made by defendants to law enforcement authorities, while under the influence of a variety of substances.  *See United States v. Martin*, F.2d 671, 672-74 (9th Cir. 1993); *United States v. Kelley*, 953 F.2d 562, 565-66 (9th Cir. 1992); *United States v. Lewis*, 833 F.2d 1380, 1384-86 (9th Cir. 1987).  However, in determining if a valid *Miranda* waiver occurred, the prosecution must prove by a preponderance of the evidence that "under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it.'"  *Unites States v. Garibay*, 143 F.3d 534, 537 (9th Cir. 1998) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986).  Such an analysis is highly fact-specific.  Upon a closer look, the cases the government argues as authoritative are distinguishable from this case.

In *Lewis*, federal agents visited the defendant on two separate occasions while she was in the hospital.  On the first occasion, where the defendant was questioned hours after she had surgery requiring general anesthesia, the length of the questioning was approximately two minutes.  *See Lewis*, 833 F.2d at 1382.  On the second occasion, a nurse at the hospital informed the agents that the defendant was "not under any medication that would affect her ability to be interviewed."  *Id*. at 1383.  The agents then advised the defendant of her *Miranda* rights and had her sign a copy of an FO 395, an Advice of Rights and Waiver Form (FO 395).  *See id*.  Reversing the decision of the district court, the Ninth Circuit found that a valid *Miranda* waiver occurred, stating that there was no evidence of when the defendant last injected narcotics.  *See id*. at 1385.

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

*Lewis* is easily distinguishable from this case.  In *Lewis*, federal agents spent only two minutes with the defendant while she was recovering from an operation she had a few hours prior, opting instead to return the next day to conduct the full interrogation.  Here, Mr. Keys was abruptly awoken out of a deep sleep by federal agents just five hours after taking 100mg of a sedative to help him fall asleep. (Decl. of Dr. Barry M. Cogan, Dkt # 23-8.)  Furthermore, unlike the defendant in *Lewis,* Mr. Keys did not sign an FO 395, and was instead tasked with reviewing a search warrant while he was hastily mirandized.  Based on the totality of these circumstances, it is clear that Mr. Keys was not of the appropriate mind state to validly waive his *Miranda* rights.

*United States v. Kelley* and *United States v. Martin* are also inapposite.  In *Kelley*, the court rejected the defendant's argument that his *Miranda* waiver was invalid because he was beginning to suffer from heroin withdrawal during the police interrogation.  *See United States v. Kelley,* 953 F.2d at 565.  However, Mr. Keys does not argue that his *Miranda* waiver was invalid because he was experiencing withdrawal from illicit drug use.  In his declaration, Mr. Keys states that he was actually under the influence of a powerful sedative at the time of the interrogation.  (Decl. of Matthew Keys 2, Dkt # 23-9).

In *Martin*—as in *Lewis*—the defendant was interrogated by law enforcement on two separate occasions while he was in the hospital.  *See United States v. Martin*, 781 F.2d at 672.  On the first occasion, the defendant received a Demerol injection about a half hour before a detective interrogated him.  Due to his condition, the detective discontinued the interrogation and returned to the hospital the next morning when the defendant, although still under the influence of pain medications, appeared much more coherent.  *See Martin*, 781 F.2d at 673-74.  The court held that although the defendant was under medical care at the time the statements were made, this was not sufficient to find that he invalidly waived his *Miranda* rights.  *See id*. at 675.  Unlike the defendant in *Martin*, Mr. Keys was interrogated for over two hours while he was under the influence of a sedative prescribed to treat his insomnia.  Due to the effects of the sedative, coupled with the fact that he was woken up out of a drug-induced sleep, Mr. Keys was unable to understand the nature and consequences of his *Miranda* waiver, and any statements he made should be suppressed.

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

Because Mr. Keys' *Miranda* waiver was not knowing, voluntary, or intelligent, and was therefore invalid, this court should suppress any oral and written statements made by Mr. Keys during the October 4, 2012 interrogation.

## **CONCLUSION**

For the reasons argued above, this court should suppress all electronic evidence seized, statements obtained, and observations of officers as a result of the October 3, 2012 search warrant and October 4 execution thereof.

Dated: January 10, 2013

By: _____ */s/ Jay Leiderman* _____
Jason S. Leiderman
jay@criminal-lawyer.me
Eric J. Lindgren
eric@criminal-lawyer.me
LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street
Suite 300
Ventura, CA 93003
Tel:    805-654-0200
Fax:    805-654-0280


By: _____ */s/ Tor Ekeland* _____
Tor Ekeland
tor@torekeland.com
TOR EKELAND, P.C.
155 Water Street
Brooklyn, NY 11201
Tel:    718-285-9343
Fax:    718-504-5417

*Attorneys for Defendant*
MATTHEW KEYS

REPLY TO OPPOSITION TO
MOTION TO SUPPRESS
Page 12

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280

LAW OFFICES OF JAY LEIDERMAN
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel: 805-654-0200
Fax: 805-654-0280