BENJAMIN B. WAGNER
United States Attorney
MATTHEW D. SEGAL
PAUL A. HEMESATH
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

LESLIE R. CALDWELL
Assistant Attorney General
United States Department of Justice, Criminal Division
JAMES SILVER
Deputy Chief for Litigation
Computer Crime and Intellectual Property Section
Washington, DC 20530
Telephone: (202) 514-1026

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>      v.<br><br>MATTHEW KEYS,<br><br>              Defendant. | CASE NO.  2:13-CR-0082 KJM<br><br>OPPOSITION TO MOTION TO QUASH THE SUBPOENA TO GOOGLE, INC.<br><br>DATE: September 25, 2015<br>TIME: 2:00 p.m.<br>COURT: Hon. Kendall J. Newman |

### I.      INTRODUCTION

Defendant Matthew Keys has moved to quash the government's subpoena to Google, Inc. ("Google") for specified records associated with a particular email account.  As Keys does not affirm that the account belongs to him, he lacks standing to move to quash the subpoena.  Assuming *arguendo* that he does have standing, the subpoena should still not be quashed because it satisfies the requirements of Federal Rule of Criminal Procedure 17, and complies with the plain language of the Stored Communications Act.

### II.      FACTS

Defendant Matthew Keys is charged via indictment with violations of the Computer Fraud and Abuse Act.  The government intends to prove at trial that Keys used a variety of Internet monikers to

conceal his identity while conducting and attempting attacks on Sacramento television station KTXL Fox 40, and the Los Angeles Times, between October 2010 and January 2011. In order to prove that it was indeed Keys behind the various monikers, the government intends to, inter alia, analyze Internet Protocol ("IP") addresses that are associated with both Keys and the aforementioned attacks.

In order to obtain IP address information, the government issued a trial subpoena to Google, Inc. ("the Google subpoena") seeking specific non-content information, including IP address information, associated with an email account provided by Google. The subpoena attachment tracks, with only minor variation, the provision of the Stored Communications Act that governs what email providers like Google must produce to the government in response to a subpoena. 18 U.S.C. § 2703(c). The subpoena attachment is further limited by a date range between September 5, 2010, and January 19, 2011. (Doc. 64-3).

Keys has now moved to quash the Google subpoena. (Doc. 64-1) Keys has not filed an affidavit affirming that the subpoenaed account belongs to him, and Keys's motion to quash merely asserts that Keys "is an account owner." (Doc. 64-1 at 8.)

### III.    ARGUMENT

#### A.    Keys Lacks Standing to Move to Quash the Subpoena

A party seeking to quash a trial subpoena must first establish its Article III standing. United States v. Binh Tang Vo, 78 F. Supp. 3d 171, 175 (D.D.C. 2015). To establish Article III standing, Keys must show injury in the form of a legally protected interest that is "concrete and particularized" and "actual or imminent." Arizona State Legislature v. Arizona Independent Redistricting Comm'n, 135 S.Ct. 2652, 2663 (2015) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The injury also must be "fairly traceable to the challenged action" and "redressable by a favorable ruling." Arizona State Legislature, 135 S.Ct. at 2663.

The requirements for standing are especially stringent when third-party subpoenas are at issue. "In many instances, the opposing party in a criminal case will lack standing to challenge a subpoena issued to a third party because of the absence of a claim of privilege, or the absence of a proprietary interest in the subpoenaed material or of some other interest in the subpoenaed documents." United States v. Tomison, 969 F. Supp. 587, 596 (E.D. Cal. 1997) (quoting United States v. Beckford, 964 F.

Supp. 1010, 1023 (E.D. Va. 1997).

Here, Keys fails to establish standing. He cites a separate provision of the Stored Communications Act that sets out a procedure for customer challenges. 18 U.S.C. § 2704(b). This provision is inapplicable here because it addresses the content of electronic communications, as opposed to the non-content records sought by the Google subpoena. However, even if this provision did apply, Keys has failed to meet its requirements as it requires "an affidavit or sworn statement…stating that the applicant is a customer or subscriber to the service from which the contents of electronic communications maintained for him have been sought[.]" Id.

Keys cites Doe v. S.E.C., No. 3:11-mc-80184 CRB (NJV), 2011 WL 4593181, (N.D. Cal. Oct. 4, 2011), in support of his standing, but this case is easily distinguishable, as the movant affirmed that the email address at issue belonged to him. Notably, the Doe court denied the motion to quash. Id.

Finally, Keys's citation of the Google Terms of Service does not support his argument for standing. Keys states he "is an account owner," without affirming that he owns the subpoenaed account. By this flawed logic, any of the roughly 425 million users of Google email accounts would have standing to move to quash the Google subpoena contested here. Frederic Lardinois, Gmail Now Has 425 Million Users, Google Apps Used By 5 Million Businesses And 66 Of The Top 100 Universities, TechCrunch (June 28, 2012), http://techcrunch.com/2012/06/28/gmail-now-has-425-million-users-google-apps-used-by-5-million-businesses-and-66-of-the-top-100-universities/. Such a conclusion defies common sense and would eviscerate the Article III standing requirement.

**B.     The Subpoena Meets the Requirements of Fed. R. Crim. P. 17**

"As the Supreme Court has explained '[a] subpoena for documents may be quashed if their production would be 'unreasonable or oppressive' but not otherwise." Tomison, 969 F. Supp. 587, 596 (quoting United States v. Nixon, 418 U.S. 683, 698 (1974)).

Keys argues that the Google subpoena should be quashed because it contains no language tailoring or limiting the information requested, and that it comprises a fishing expedition. This is false: as stated above, the subpoena attachment closely tracks the relevant provision of the Stored Communications Act, 18 U.S.C. § 2703(c)(2), is further limited by reference to a single user account

OPPOSITION TO MOTION TO QUASH                                3

over a five-month date range related to the charged conduct.  These limitations render the Google subpoena far narrower and readily distinguishable from the cases cited by Keys.  For example, in Moon v. SCP Pool Corp., 232 F.R.D. 633, 637-38 (C.D. Cal. 2005), the court quashed a subpoena that "broadly" sought "any and all documents over a ten year or greater period relating to defendant and [a] nonparty."

In order to more clearly demonstrate that the documents sought by the Google subpoena meet the Nixon requirements of relevancy, admissibility, and specificity, 418 U.S. at 700, the government has attached a Microsoft PowerPoint presentation that it intends to introduce at trial as a summary exhibit (Exhibit A), and which is the subject of a pending motion in limine for admission into evidence under Federal Rule of Evidence 1006.  (Document 67.)  As the presentation demonstrates, the analysis of IP addresses between September 2010 and January 2011 -- the date range contained in the Google subpoena attachment -- figure prominently in the government's intended proof of attribution.

Keys further suggests that the Google subpoena would require Google to "create searches or documents which do not exist," but offers no proof of this.  Furthermore, the opinion cited by Keys in support of this proposition rejected Google's argument that it faced an undue burden in being required to create new computer code to extract information responsive to the subpoena at issue.  Gonzales v. Google, Inc., 234 F.R.D. 674, 683 (N.D. Cal. 2006).

Finally, Keys can assert no reasonable expectation of privacy in the information sought by the Google subpoena.  Courts have uniformly held that this sort of non-content subscriber information is not protected by the Fourth Amendment.  See, e.g., United States v. Bynum, 604 F.3d 161, 164 (4th Cir. 2010) (holding defendant identified no "evidence that he had a subjective expectation of privacy in his internet . . . 'subscriber information'" because he "voluntarily conveyed" that information to the company, and "assumed the risk" that the company would provide that information to the police (internal citations omitted)); United States v. Perrine, 518 F.3d 1196, 1204 (10th Cir. 2008) ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation."); Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001) ("We conclude that plaintiffs . . . lack a Fourth Amendment privacy interest in their subscriber information because they communicated it to the systems operators.").  The Ninth Circuit has

similarly held that an Internet user has no reasonable expectation of privacy in Internet e-mail and IP addressing information.  United States v. Forrester, 512 F.3d 500, 510 (9th Cir. 2007).

### C. The Subpoena Is Authorized by the Stored Communications Act

"There is no provision in the ECPA[1] allowing a customer whose non-content records are being sought to prevent disclosure[.]"  Doe, 2011 WL 4593181 at *3.  As described *supra*, while the Stored Communications Act allows customers or subscribers to challenge governmental efforts to obtain the content of their electronic communications, 18 U.S.C. § 2704(b), the section of the SCA relevant here, covering non-content is notably silent.  18 U.S.C. § 2703(c).

The question now becomes whether the Google subpoena seeks content.  It does not.  As the subpoena attachment plainly illustrates, it seeks names, addresses, connection records, session records, payment information, and other categories well outside "the substance, purport, or meaning" of communications, as content is defined for purposes of the SCA.  18 U.S.C. § 2510(8).

Keys argues that the subpoena impermissibly requests information in the plural, and should instead request in the singular, following the Stored Communication Act's wording.  However, this argument should be rejected, as it violates the canon of construction that Congress specifically created to govern its drafting of the United States Code ("the Code").  1 U.S.C. § 1.  This canon instructs that singular language within the Code should "include and apply" to the plural.  Id.

Finally, the subpoena attachment's inclusion of such sub-categories of information as ESN, MEIN, or SIM numbers, does not impermissibly broaden the scope of the subpoena.  Instead, these sub-categories are merely examples of what could be contained within the SCA-authorized category of "telephone or instrument number[s]."  18 U.S.C. § 2703(c)(2)(E).

### IV. CONCLUSION

For all of the foregoing reasons, the Court should deny Keys's motion to quash in its entirety.

---

[1] The Stored Communications Act is sometimes referred to as the Electronic Communications Privacy Act, or ECPA.  Pub. L. No. 99-508, 100 Stat. 1848 (1986).  Thus, this statement applies with equal force here.

1
2  Dated:  September 9, 2015                          LESLIE R. CALDWELL
                                                     Assistant Attorney General
3
4                                              By:   /s/ JAMES SILVER
                                                     JAMES SILVER
5                                                    Deputy Chief for Litigation

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO MOTION TO QUASH                  6