BENJAMIN B. WAGNER
United States Attorney
MATTHEW D. SEGAL
PAUL A. HEMESATH
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

LESLIE R. CALDWELL
Assistant Attorney General
United States Department of Justice, Criminal Division
JAMES SILVER
Deputy Chief for Litigation
Computer Crime and Intellectual Property Section
Washington, DC 20530
Telephone: (202) 514-1026

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>MATTHEW KEYS,<br><br>                    Defendant. | CASE NO. 2:13-CR-0082 KJM<br><br>UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE #4 REGARDING IRC LOG FILES<br><br>DATE: September 25, 2015<br>TIME: 10:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

**I.    INTRODUCTION**

Defendant Matthew Keys has moved to exclude from evidence Internet Relay Chat[1] ("IRC") log files obtained from the execution of a search warrant at the residence of Dennis Collins, arguing that they cannot be authenticated if Collins is deceased.  As Keys fails to address the full range of authentication methods offered by Federal Rule of Evidence 901(b), and overstates the effect of Collins's unavailability to testify on the government's ability to authenticate the IRC log files, this Court should deny defendant's motion and admit the IRC log files into evidence.

---

[1] The government does not dispute defendant's description of Internet Relay Chat.  (Document 69-1, n.6.)

## II.   OFFER OF PROOF

On January 27, 2011, the Federal Bureau of Investigation ("FBI") executed a search warrant at the Ohio residence of Dennis Collins and seized, *inter alia*, a computer containing log files related to the use of IRC.  (Gov. Exh. 702.)  The log files contained records of IRC exchanges among several monikers, including chats between "AESCracked" and "sharpie" in which the two discussed attacking the *Los Angeles Times*, AESCracked gave sharpie login credentials for a *Los Angeles Times* server, and AESCracked unsuccessfully attempted to regain access to the server after sharpie lost access.  (*Id.*)  The log files further contain multiple references to an Internet Protocol ("IP") address that AT&T records show as then assigned to defendant Keys.  (*Id.*)

For example, one chat log dated December 8, 2010, at 5:57 p.m. Los Angeles time, shows AESCracked writing "It takes a while to grant one username permission to every site."  Later in the chat session, AESCracked writes "those are the three cms that this user/pass gives access to . . . user: anon1234 . . . pass: common2."  Additional statements by AESCracked include "Yet another reason the Times must be demolished," and "Members of the media: I am a former journalist."  Some of these chats are summarized or excerpted in the Superseding Indictment.  (Document 44, ¶¶ 9-16.)

Log files obtained from a California-based server belonging to Tribune Company, the owner of the *Los Angeles Times*, show simultaneous, closely-related activity also involving username anon1234, and dated December 8, 2010, at 5:57 p.m. Los Angeles time.  (Gov. Exh. 801.)  These files show that the Internet Protocol ("IP") address 80.74.135.87 was logged onto the server, and referencing username anon1234.  (*Id.*)

Log files obtained from Overplay, a company that offered Virtual Private Network services and that controlled IP address 80.74.135.87, show that on December 8, 2010, from 5:31 to 7:57 p.m. Los Angeles time, the IP address was in use by its customer "keysjom," whom additional Overplay records identified as defendant Matthew Keys.  (Gov. Exh. 305.)

Digital media seized from defendant Keys himself in October 2012 also contained screenshots of IRC chats between AESCracked and sharpie regarding their attack on the *Los Angeles Times*.  (Gov. Exh. 701.)

Finally, while being interviewed by the FBI, defendant Keys was provided with a printout of

some of the IRC chats seized from the Ohio computer, and Keys annotated them by hand.  (Exh. A.) Alongside statements by AESCracked, Keys wrote "I recollect being in this chat room[.]  I do not recollect making these statements but that does not mean . . . they were not made."  Keys further placed his initials next to six separate statements by AESCracked, and wrote "I may have said this, but I don't recall."  (*Id.*)

The interconnections set out above, referencing the contents of multiple computers in different locations, along with a portion of Keys's written confession, are only a sample of what the United States can offer to authenticate the IRC logs obtained from the Collins residence.

### III. ARGUMENT

#### A. **Authentication Requirements Are Low, Threshold Preliminary Standards That Are Followed by Cross-Examination and the Fact-Finder's Determination of Weight.**

Federal Rule of Evidence 901(a) requires the proponent of an item of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is."  *Id.*  Authentication requirements are "threshold preliminary standard[s] to test the reliability of the evidence, subject to later review by an opponent's cross-examination."  *Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534, 544 (D. Md. 2007) (citing Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 900.06 [3] (Joseph M. McLaughlin ed., Matthew Bender 2d ed.1997); *United States v. Macklin*, 119 F.3d 8 (Table), 1997 WL 406743 at *1 (9th Cir. 1997) (describing "the low prima facie admissibility threshold").

A district court's decision to admit evidence is reviewed for an abuse of discretion.  *United States v. Salcido*, 506 F.3d 729, 732 (9th Cir. 2007).

#### B. **Federal Rule of Evidence 901 Allows Multiple Methods of Authenticating the IRC Logs.**

Federal Rule of Evidence 901(b) sets out a list of examples, "not a complete list," of evidence that satisfies the requirement.  *Id.*  Several of these examples are relevant here.

First, Rule 901(b)(1) permits authentication through testimony that an item is what it claimed to be by a witness with knowledge.  *Id.*  Here, the FBI agents who watched Keys annotate the IRC transcript can introduce Keys's annotation as evidence that the IRC logs are authentic.  Defendant

Keys's annotations to the transcript simultaneously support the propositions that (1) Keys had knowledge of the chats contained in the printout; and (2) Keys recognized the printout itself as authentic. Keys's annotations to the printout are not hearsay because they are statements by a party-opponent. Fed. R. Evid. 801(d)(2)(A).

Next, Rule 901(b)(3) allows authentication of the IRC logs where the trier of fact compares them "with specimens which have been authenticated." *United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (emails that were not clearly identifiable on their own could be authenticated by comparison to other emails that had been independently authenticated). Here, the jury could compare the logs to the printout annotated by Keys in order to determine their authenticity. The jury could further compare the dates and times of particular entries in the IRC logs to related, simultaneous entries in the *Los Angeles Times* and Overplay logs described above, which will have been separately authenticated. Additionally, the jury could compare the logs to similar IRC logs recovered from Keys's own computer, which will be independently introduced into evidence through the FBI agents who seized it.

Lastly, Rule 901(b)(4) provides a third way to authenticate the IRC logs. This rule provides that evidence can be authenticated based upon distinctive characteristics such as "contents, substance, internal patterns, or other distinctive characteristics." *United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000) (email was appropriately authenticated based entirely on circumstantial evidence, including presence of the defendant's work email address, information within the email with which the defendant was familiar, and use of the defendant's nickname); *Safavian*, 435 F. Supp. 2d at 40 (distinctive characteristics for email included the "@" symbol, email addresses containing the name of the person connected with the email, and the name of the sender and recipient in the "To," "From," or signature block areas); *United States v. Miller*, 771 F.2d 1219, 1234 (9th Cir. 1985).

Here, several distinctive characteristics of the IRC logs permit their authentication under Rule 901(b)(4). First, as detailed above, their contents and substance bear an identical time-and-date relationship to parallel entries in the Tribune Company and Overplay logs. This distinctive relationship is another permissible basis for the authentication of the IRC logs.

The content of the IRC logs also relates to the entries contained in the Tribune Company logs—

for example, the IRC logs show AESCracked passing to sharpie the username anon1234, and the Tribune Company logs contain a simultaneous reference to username anon1234.  The content of the IRC logs further contains AESCracked's descriptions of the particular features of the Tribune Company computer system, such as the "Assembler site" and its "user preferences" menu.  The presence of the moniker AESCracked throughout the logs is itself an additional distinctive characteristic that supports authentication, especially as Keys admitted to using this moniker within IRC communications.

Finally, the IRC logs contain multiple instances of an IP address independently associated with Keys through AT&T records that have already been admitted into evidence by stipulation.  (Document 66.)

### C.   The Mere Possibility that the IRC Logs Were Altered Is Not Sufficient to Exclude Them.

"The fact that it is possible to alter data contained in a computer is plainly insufficient to establish untrustworthiness."  *United States v. Bonallo*, 858 F.2d 1427, 1436 (9th Cir. 1988); *see also Safavian*, 435 F. Supp. 2d 36, 41 (D.D.C. 2006); *United States v. Whitaker*, 127 F.3d 595, 602 (7th Cir. 1997); *United States v. Glasser*, 773 F.2d 1553, 1559 (11th Cir. 1985) ("The existence of an air-tight security system [to prevent tampering] is not, however, a prerequisite to the admissibility of computer printouts.  If such a prerequisite did exist, it would become virtually impossible to admit computer generated records; the party opposing admission would have to show only that a better security system was feasible.").

Against this legal framework, defendant's contention—that Collins's unavailability and the possibility of alteration combine to prohibit authentication—must fail.  First, Keys offers no proof that any alteration actually took place.  Keys's contention that the log files were "obfuscated, presumably by Mr. Collins, using various file names and extensions" contradicts the government's finding that the files were found to have ordinary file names.

Second, the unavailability of Mr. Collins cannot itself prevent the government from introducing records seized from his premises.  If this were the case, then the government would effectively be barred from authenticating evidence seized from any party absent that party's testimony.  Instead, the

government should be permitted to authenticate the IRC logs using the methods set out above. After cross-examination by the defense, the jury will fulfill its proper role of assessing the evidentiary weight of the IRC logs.

Finally, it is noteworthy that the seizure of the IRC logs from the residence of Collins predated the first indictment in this case by more than two years. To the extent that defendant suggests that the IRC logs were altered in some manner prejudicial to him, such alteration would have required near-clairvoyant powers of prognostication.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court should deny defendant Keys's motion to exclude the IRC logs obtained from the residence of Dennis Collins, and permit the government to admit them into evidence.

Dated:  September 16, 2015

LESLIE R. CALDWELL
Assistant Attorney General

By:  /s/ JAMES SILVER
JAMES SILVER
Deputy Chief for Litigation