BENJAMIN B. WAGNER
United States Attorney
MATTHEW D. SEGAL
PAUL A. HEMESATH
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

LESLIE R. CALDWELL
Assistant Attorney General
Criminal Division, United States Justice Department
JAMES SILVER
Deputy Chief
Computer Crime and Intellectual Property Section
Washington, DC 20530
Telephone: (202) 514-1026

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>MATTHEW KEYS,<br><br>  Defendant. | CASE NO.  2:13-CR-0082 KJM<br><br>UNITED STATES' RESPONSE TO DEFENDANT'S MOTION IN LIMINE #2 REGARDING USE OF "CANCERMAN EMAILS"<br><br>DATE: September 25, 2015<br>TIME: 10:00 a.m.<br>COURT: Hon. Kimberly J. Mueller |

## I.    INTRODUCTION

After he was fired, Matthew Keys retaliated against Tribune Company in an escalating course of pseudonymized, hostile online conduct that reached its climax between December 1, 2010 and December 15, 2010.  Keys downloaded FOX40's list of viewer email addresses and he sent his old boss a pseudonymous email bragging that "we" had taken FOX40's email list from the Tribune Company ("Tribune") content management system, or "CMS."  Keys said the list was going to be used against FOX40, and then proceeded to use it while bragging about how easy it was to access Tribune's data. This conduct, which occurred December 1-6, 2010, is actually what first made Tribune aware of an intruder who had compromised the integrity of its CMS.  Tribune spent hours responding to this incident

among themselves, with law enforcement, and with Keys, trying to identify who was behind the breach. Keys denied involvement until federal agents entered his apartment with a search warrant and took his minimizing confession to this conduct. (Gov. Exh. A.)

These emails are actually what got this entire case started. They are charged in the Superseding Indictment. "After his employment was terminated, MATTHEW KEYS kept and used, for malicious purposes, login credentials to the Tribune Company's CMS." (Sup. Ind., Ct. One ¶ 1(h), Ct. 2 ¶ 1, Ct. 3 ¶ 1). Nothing could be more relevant.

## II.   OFFER OF PROOF

On October 28, 2010, FOX40 fired Keys. On November 3, 2010, the Tribune CMS received a command from username "test1234" to download its email list to a European proxy server. (*See* Cauthen Presentation, attached as Exhibit A to Docket #67.) Then, on December 1, 2010, Brandon Mercer, FOX40's News Director and Keys's former supervisor, received a series of emails from "Fox Mulder."[1] Using the first-person plural, "Fox Mulder" claimed "we" had obtained a customer email list obtained as a result of a FOX40 publicity campaign. "Fox Mulder" offered a few email addresses and invited Mercer to check them against the CMS. (Gov. Exh. B at 4-5.) "Fox Mulder" warned that the people on the list would be receiving a "special message" about FOX40's email registration process. (*Id.*) Mercer, who will testify, was very concerned about this and sought to learn more about the intruders. (*Id.*) He contacted the FBI.

On December 2, 2010, Mercer warned "Fox Mulder" about legal consequences. (Gov. Exh. B at 8.) "Fox Mulder" wrote back that it would be very hard to identify conduct that had originated overseas and that identifying the hackers would be "a long and painstaking process" for lawyers. (*Id.*) Mercer then received an email from "Cancer Man,"[2] attaching what message would be sent out to FOX40's list. (Gov. Exh. B at 7.) When the emails did go out to FOX40's viewers, they warned viewers about the compromise of their personal information and said that "It just may change the way that you look at [FOX40] forever." (Gov. Exh. B at 17.)

---

[1] "Fox Mulder" was the name of a character on *The X-Files*, a show that was broadcast on Fox in the 1990's. "Mulder" was an FBI agent who investigated aliens and the paranormal.

[2] "Cancer Man" was another character on The X-Files.

GOVERNMENT'S RESPONSE TO DEFENSE'S MOTION IN LIMINE #2     2

1  Mercer continued to communicate with the X-Files identities in an effort to persuade them to
2 stop.  Mercer also worked with the FBI.  Tribune Company continued to receive communications
3 taunting it about its compromised systems.  "Cancer Man" bragged to Mercer, "You fox people make it
4 incredibly easy to gain access to your subscriber list."  (Gov. Exh. B at 18.)  "Cancer Man" then sent an
5 email that implied that the breach was by an insider who had "gone rogue."  (Gov. Exh. B at 20.)

6  It was also in this December 6-14, 2010 period that Samantha Scholbrock, who had replaced
7 Keys, experienced trouble with her network access.  (Gov. Exh. C.)  Scholbrock correctly inferred what
8 was happening: someone who used to work at the company was using super-admin powers to change
9 her password sporadically.  (*Id.*)  SA Cauthen will show that someone was using Keys's IP address and
10 the Overplay proxy server in Europe to tamper with Scholbrock's login credentials.  On December 6,
11 2010, another email went out critical of FOX40 under the name of another X-Files character, "Walter
12 Skinner."  (Gov. Exh. B at 21-22.)

13  On December 8, 2010, and the subsequent week, AESCracked appeared on the Anonymous IRC
14 channel and offered a Fox email list and access to the Tribune CMS.  He gave them the credentials and,
15 in colorful terms, urged them to attack Tribune Company properties, including, specifically, *The Los*
16 *Angeles Times*.

17  Mercer suspected that Keys was behind the hijacking of the email list.  On December 12, 2010,
18 using FBI equipment, Mercer called Keys and recorded the conversation.  (Proferred here, but to be
19 introduced at trial as Government's Exhibit 201.)  Keys denied any knowledge of the harassing emails.
20 But he said that he had been in contact with Anonymous (a hacking group), that they were doing "a lot
21 of illegal shit," and that there was an attack coming against *The Los Angeles Times*.  That attack came
22 two days later, on December 14, 2010, when Anonymous member "Sharpie" altered a *Los Angeles*
23 *Times* story.  The next day, Keys unsuccessfully tried to help Sharpie back into the CMS in order to do
24 more damage.

25  There is no question that Keys was the one who had hijacked the FOX40 email list.  When
26 agents questioned him during the search warrant, Keys admitted that he had obtained the list from the
27 Tribune CMS, used a European proxy server as an "extra layer" to protect his identity, sent the emails to
28 be "antagonistic" towards his former employer in an act of "hooliganism," and had offered the list to

Anonymous (*See* Transcript of Key's statement, as Exhibit A to Docket #72 at 45, 46, 49, 51, 58.)

### III.     ARGUMENT

#### A.     Introduction

The content of these emails is tame and bears no resemblance to the kind of evidence that merits real Rule 403 consideration.  And it is certainly relevant.  Keys's use of network credentials to download the FOX40 email list and use it maliciously falls within the time period and conduct charged in each count of the Superseding Indictment.  "After his employment was terminated, MATTHEW KEYS kept and used, for malicious purposes, login credentials to the Tribune Company's CMS."  (Sup. Ind., Ct. One ¶ 1(h), Ct. 2 ¶ 1, Ct. 3 ¶ 1).  The inclusion of this allegation in the indictment should be dispositive of this motion.

#### B.     There is no Unfair Prejudice

The X-Files emails are attached hereto (Gov. Exh. B) and the Court should review them all in order to make its Rule 403 balancing decision.  *See United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007) (en banc) (reversing where district court ruled on Rule 403 objection without first reading the evidence).  The X-Files emails are not particularly inflammatory and certainly do not seem to fit in among the kind of evidence that is more typically subject to claims of unfair prejudice.  *See, e.g., id.* (stories about the sexual abuse of children).  Here, Keys has not specifically explained the way in which this evidence is "highly prejudicial."  (Def. Mot. at 9.)  He cannot make more than a conclusory claim because there is no real Rule 403 issue here.  The evidence shows no "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).  Criticism of a local news station just does not compare to the kind of evidence that raises valid concerns of unfair prejudice.  *See, e.g. id.* (gang affiliation properly admitted to impeach); *United States v. Waters*, 627 F.3d 345, 356 (9th Cir. 2010) (anarchist literature advocating rioting and violence); *United States v. Nobari*, 574 F.3d 1065, 1074-1075 (9th Cir. 2009) (generalizations about what ethnic groups play what roles in drug trade)

On the other hand, the relevance of the emails is obvious.  They will also establish the hours FOX40 employees spent investigating of the hacking attack about which the emails bragged.  They will prove that Keys possessed login credentials to the Tribune CMS, the instrumentalities of the crime

charged in every count. They will show Keys had motive. They will help authenticate the chat logs. Finally, they will show how Tribune Company learned of the codes, commands, and information being sent to its CMS.

### C. Keys's Hijacking of the FOX40 Email List Goes Directly to Prove Count 2's Elements of "Transmission of Code and Information," "Damage," and "Course of Conduct" causing "Loss."

Count Two's charge is broader than the defacement of *The Los Angeles Times*. (Sup. Ind., Ct. One ¶ 1(h), Ct. 2 ¶ 1.) Rather, Count Two covers Keys's entire course of conduct vis-à-vis the Tribune Company CMS from his firing until the final deactivation of his last username. That course of conduct includes when Keys repeatedly deactivated his replacement's passwords, when Keys created new powers for ghost credentials, and when Keys hijacked the FOX40 email list, sent harassing messages to its recipients, and caused some FOX40 customers to become upset and ask to be removed from the list.

When Keys did these things, he sent emails to intimidate Tribune Company and taunt his former boss. The X-Files characters created by Keys bragged that "they" had easily compromised Tribune Company's network and it was easy to take FOX40's data. (Exhibit A.) This compromise to the integrity of the CMS was "damage" under the statute. 18 U.S.C. § 1030(e)(8) ("The term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information."). And the time that salaried Tribune Company employees spent responding to this incident was loss.

> It is sufficient to show that there has been an impairment to the integrity of data, as when an intruder retrieves password information from a computer and the rightful computer owner must take corrective measures 'to prevent the infiltration and gathering of confidential information.' Costs associated with investigating intrusions into a computer network and taking subsequent remedial measures are losses within the meaning of the statute.

*Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010). Courts interpreting section 1030 understand what Keys did in 2010. When Keys breached Tribune Company's network, stole data, misused passwords, and remained lurking and able to do more damage, he impaired the integrity of the CMS. *See Shurgard Storage Centers, Inc. v. Safeguard Self Storage, Inc.*, 119 F.Supp.2d 1121, 1126–27 (W.D.Wash. 2000); *I.M.S. Inquiry Management Systems, Ltd. v. Berkshire Information Systems, Inc.*, 307 F.Supp.2d 521, 525-26 (S.D.N.Y. 2004) (allegation that the integrity of copyrighted data system was impaired by defendant's copying was sufficient to plead cause of action under CFAA). Keys knew

his breach would cause an expensive incident response.  In his own words, response to a hacking incident requires "a long and painstaking process."  (Gov. Exh. B at 7.)

> This "long and painstaking process" is part of the loss for purposes of the CFAA:
>
> [W]here the offender has actually accessed protected information, discovering who has that information and what information he or she has is essential to remedying the harm. In such cases courts have considered the cost of discovering the identity of the offender or the method by which the offender accessed the protected information to be part of the loss for purposes of the CFAA.

*SuccessFactors, Inc. v. Softscape, Inc.*, 544 F.Supp.2d 975, 981 (N.D.Ca. 2008) (citing *Shamrock Foods Co. v. Gast*, 535 F.Supp.2d 962, 963-64 (D.Ariz.2008) (finding that the cost the plaintiff incurred in conducting a forensic analysis of the defendant's computer was a loss where the defendant emailed the plaintiff's confidential information to himself before resigning from his position with the plaintiff). Because Keys's misuse of passwords and the FOX40 email list compromised the integrity of the system, the jury can find "an impairment to the integrity of data or information even though no data was physically changed or erased."  *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F.Supp.2d 991, 996 (E.D. Cal. 2007).  This holding and that of *Shurgard* are based on the CFAA's legislative history, which pretty well anticipated what Keys did:

> The 1994 amendment required both "damage" and "loss," but it is not always clear what constitutes "damage." For example, intruders often alter existing log-on programs so that user passwords are copied to a file which the hackers can retrieve later. After retrieving the newly created password file, the intruder restores the altered log-on file to its original condition. Arguably, in such a situation, neither the computer nor its information is damaged. Nonetheless, this conduct allows the intruder to accumulate valid user passwords to the system, requires all system users to change their passwords, and requires the system administrator to devote resources to resecuring the system. Thus, although there is arguably no "damage," the victim does suffer "loss." If the loss to the victim meets the required monetary threshold, the conduct should be criminal, and the victim should be entitled to relief.

Senate Report 104-357, 11.

Keys hijacked FOX40's email list, misappropriated access credentials and then taunted Tribune that a group of hackers had at-will access to their network.  As he intended, a lot of people spent time on this.  The incident falls within Count 2.  Tribune's compromised network and the hours spent responding to it are direct, admissible evidence of the damage and loss elements of Count 2.

### D.   Relevance to Counts 1 and 3

Keys's hijacking of the FOX40 email list establishes facts important to the proof of Count One's conspiracy to deface *The Los Angeles Times:* Keys actually possessed login credentials to the Tribune Company CMS.  A person's possession of something that he is charged with distributing to co-conspirators is relevant to prove his participation in the conspiracy.  *See United States v. Alvarez*, 358 F.3d 1194, 1205 (9th Cir. 2004).  In this case, the fact is expressly charged in the Superseding Indictment.  "After his employment was terminated, MATTHEW KEYS kept and used, for malicious purposes, login credentials to the Tribune Company's CMS."  (Sup. Ind., Ct. One ¶ 1(h).)   The FOX40 email list is also relevant to Keys's interest in joining a conspiracy to harm Tribune Company, FOX40, and *The Los Angeles Times*.  Within a week of hijacking FOX40's email list, Keys joined a conspiracy in which "Participants identified Tribune Company, FOX40, and *The Los Angeles Times* for online intrusion and web vandalism."  (*Id.* ¶ 4.)  The fact that Keys had passwords post-termination and was already using them for "hooliganism" tends to prove that he was able to give Anonymous the login names and passwords used for the attack on *The Los Angeles Times*.  (Id. ¶ ¶ 4-7.)

That Keys was already using his credentials maliciously is evidence of his motive.  "Motive is evidence of the commission of any crime."  *United States v. Bradshaw*, 690 F.2d 704, 708 (9th Cir. 1982).  Far more unfairly prejudicial acts than sending unsolicited emails are properly admitted to show motive.  *See id.* (sexual abuse of a nine-year-old); *United States v. Major*, 676 F.3d 803, 810 (9th Cir. 2012) (gang affiliation).

### E.   Authentication of the #internetfeds Chat Logs

The emails also provides evidence showing that the Dennis Collins computer (the subject of another of Key's motions in limine) was an authentic record of IRC chats.

In the logs found on the Dennis Collins computer, AESCracked offers up an email list on December 19, 2010, writing "Anyone want to buy an email list?"  He later confessed to this so the email evidence helps authenticate AESCracked as Keys and the Dennis Collins logs as true records.  This is obviously at issue because Keys says the authentication is so weak as to be speculative.

### F. The Need to Tell a Coherent Story

Even acts outside of the indictment are admissible intrinsic evidence when they are part of a single criminal transaction or when admission is necessary in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime. *See United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002) (other drug runs with same co-conspirators intrinsic evidence*); United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (evidence of shoot-out intrinsic contextual evidence in felon-in-possession-of-firearm case). "A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Id.* quoting *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984). These are not "other acts" at all, because "the evidence the government seeks to introduce is directly related to, or inextricably intertwined with, the crime charged in the indictment." *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003) (in drug conspiracy case, court properly admitted defendant's theft of cocaine from his co-conspirators).

In this case, the emails are an essential part of the story—they set the stage for Key's subsequent actions, they reveal the context for Key's motives, and they fill in the timeline between Key's firing and the attack on the *Los Angeles Times*. To exclude them is to obscure several important acts in an otherwise cohesive story.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

There should not be any need to consult the Ninth Circuit's teachings about inextricably intertwined evidence. This conduct, over the period of time is charged in the indictment. The government is going to prove Tribune's loss conservatively, based on the hours spent responding to the compromise of the integrity of the CMS. These emails are how FOX40 learned of the compromise of the integrity of the CMS and what motivated FOX40 to respond. They are direct evidence of the offense.

Furthermore, there is no unfair prejudice, both because it is direct evidence and because it is so relatively anodyne.

Dated:  September 16, 2015                                BENJAMIN B. WAGNER
                                                          United States Attorney

                                                    By:   /s/ MATTHEW D. SEGAL
                                                          MATTHEW D. SEGAL
                                                          PAUL A. HEMESATH
                                                          Assistant United States Attorneys


                                                          LESLIE R. CALDWELL
                                                          Assistant Attorney General
                                                          United States Department of Justice, Criminal
                                                            Division


                                                           /s/ JAMES SILVER
                                                          JAMES SILVER
                                                          Deputy Chief for Litigation
                                                          Computer Crime and Intellectual Property Section