Tor Ekeland, Pro Hac Vice
tor@torekeland.com
Tor Ekeland, P.C.
195 Plymouth Street, 5th Floor
Brooklyn, NY 11201
Tel:  718-737-7264
Fax: 718-504-5147
www.torekeland.com

Jason S. Leiderman, SBN 203336
jay@criminal-lawyer.me
Law Office of Jay Leiderman
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel:  805-654-0200
Fax: 805-654-0280

*Pro Bono Attorneys for Defendant
Matthew Keys*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

X————————————————X

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **2:13-CR-00082-KJM** |
| **Plaintiff,** | |
| **v.** | |
| **MATTHEW KEYS,** | |
| **Defendant.** | |

X————————————————X

**DEFENDANT'S TRIAL BRIEF**

<h1 style="text-align:center">STATEMENT OF FACTS</h1>

1
2      The charges in this case stem from edits to one paragraph of a story on the Los Angeles

3    Times website on December 14, 2010. That day, using the Los Angeles Times/Tribune

4    Company's content management system ("CMS"), the user "ngarcia" allegedly altered a

5    paragraph of a latimes.com story. The article's title and byline originally appeared as follows:

6    **Pressure builds in House to pass tax-cut package**

> House Democratic leader Steny Hoyer sees 'very good things' in the tax- cut deal, which many representatives oppose. But with the bill set to clear the Senate, reluctant House Democrats are feeling the heat to pass it.

7    By Lisa Mascaro, Tribune Washington Bureau[1]

8    After the minor edits by ngarcia, the article's title and byline allegedly read:

9    **Pressure builds in House to elect CHIPPY 1337**

10
11

> House Democratic leader Steny Hoyer sees 'very good things' in the deal cut which will see uber skid Chippy 1337 take his rightful place, as head of the Senate, reluctant House

12
13
Democrats told to SUCK IT UP. By CHIPPYS NO 1 FAN, Tribune Washington Bureau[2]

14    The website administrators restored the original in less than an hour. For the foregoing,

15    Mr. Keys has been charged with one count of conspiracy to violate the Computer Fraud and

16    Abuse Act ("CFAA"), in violation of 18 U.S.C. §§ 371 and 1030(a)(5)(A); one count of

17    knowingly transmitting a code with the intent to cause damage to a protected computer in

18    violation of 18 U.S.C. § 1030(a)(5)(A); and one count of attempt to transmit a code with the

19    intent to cause damage to a protected computer in violation of 18 U.S.C. § 2 and 1030(a)(5)(A).

20    For this he faces a maximum sentence of 25 years in jail, $750,000 in fines, 9 years of supervised

21    release, and criminal forfeiture. *U.S. v. Keys*, Superseding Indictment, 2:13-CR-00082 (Dec. 4,

22    2014) (ECF # 44).

---

[1] The original article is still available on the Los Angeles Times website, *see* Lisa Mascaro, *Pressure builds in house to pass tax-cut package*, http://articles.latimes.com/2010/dec/14/news/la-pn-hoyer-tax-vote-20101215 (last visited Sept. 9, 2015).

**ADMISSIONS AND STIPULATIONS**

There are no admissions at this time. The Defense has entered into two stipulations with the government as to the authenticity of certain business records under Federal Rule of Evidence 803(6). (ECF # 66, 84.).

**ISSUES**

**I.     Loss Cognizable Under the CFAA**

The aggregate amount of loss sustained by the Tribune will be a significant matter of dispute. Mr. Keys is being charged with sending, conspiring to send, and attempting to send a code to a protected computer with the intent of damaging that computer. To establish felony liability for this offense the Government must show "[l]oss to 1 or more persons . . . aggregating at least $5,000 in value" 18 U.S.C.A. § 1030 (c)(4)(A)(i)(I); *see also* 18 U.S.C.A. § 1030(c)(4)(B). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages *incurred because of interruption of service*." 18 U.S.C. § 1030(e)(11) (emphasis added).

The Defense anticipates the Government will seek to include economic loss that is not cognizable under the CFAA. Specifically, the Government will likely fail to acknowledge the distinction between harm caused by the misappropriation or misuse of data obtained from the alleged CFAA violation and harm actually caused to any protected system or sustained in the course of restoring integrity to a protected system. There is a significant body of case law establishing this distinction. *See United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012)(stating the CFAA targets the "unauthorized procurement or alteration of information, not its misuse or misappropriation."); *see also* See *BHRAC, LLC v. Regency Car Rentals, LLC*, No. CV 15-865-

1    GHK MANX, 2015 WL 3561671, at *3 (C.D. Cal. June 4, 2015) (excluding harm caused by

2    theft and use of trade secret customer list obtained from CFAA violation); *Farmers Ins. Exch. v.*

3    *Steele Ins. Agency, Inc.*, No. 2:13-CV-00784-MCE, 2013 WL 3872950, at *2 (E.D. Cal. July 25,

4    2013) (excluding harm caused by misuse of company's proprietary information). Rather, to

5    allege a loss under the CFAA, "plaintiffs must identify impairment of or damage to the computer

6    system that was accessed without authorization." *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,

7    No. 2:13-CV-00784-MCE, 2013 WL 3872950, at *21 (E.D. Cal.' July 25, 2013). Costs

8    associated with investigating business losses should also be excluded. *See Nexans Wires S.A. v.*

9    *Sark-USA, Inc.*, 166 F. App'x 559, 563 (2d Cir. 2006) (Excluding costs "incurred investigating

10   business losses unrelated to actual computers or computer services.").


11       **II.    Whether there is "Damage" under the CFAA**
12              To establish violation of 18 U.S.C. § 1030(a)(5)(A) the government must show Mr.

13   Keys "knowingly cause[d] the transmission of a program, information, code, or command, and

14   as a result of such conduct, intentionally caus[ed] damage without authorization, to a protected

15   computer." *Id.* The CFAA defines "damage" as "any impairment to the integrity or availability

16   of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). The relevant conduct that

17   allegedly caused the § 1030(a)(5)(A) damage was the brief edit to the LA Times website. The

18   brief edit does not qualify as as damage under the CFAA as the edit neither impaired the

19   integrity or availability of the edited data. The evidence at trial will show that as soon as the edits

20   were discovered restoring the original version of the story was as simple as pressing a button,

21   and that is what effectively occurred.

22              District courts across the country have sensibly held that where edited or deleted

23   information was backed up, or remained available in other locations, that the edits or deletions

24   did not constitute CFAA damage. *See Instant Tech., LLC v. DeFazio*, 40 F. Supp. 3d 989, 1019

1    (N.D. Ill. 2014) *aff'd,* 793 F.3d 748 (7th Cir. 2015) (holding there was no CFAA damage where

2    deleted information remained available in email trash folder and on another computer accessible

3    to the Plaintiff.); *Grant Mfg. & Alloying, Inc. v. McIlvain*, No. CIV.A. 10-1029, 2011 WL

4    4467767, at *8 (E.D. Pa. Sept. 23, 2011) *aff'd,* 499 F. App'x 157 (3d Cir. 2012) (holding that

5    because the records marked for deletion were still available and accessible there was no CFAA

6    damage); *Cheney v. IPD Analytics, L.L.C.*, No. 08-23188-CIV, 2009 WL 1298405, at *6 (S.D.

7    Fla. Apr. 16, 2009) (holding that the "deletion of files alone does not constitute damage. . . if the

8    deleted data is still available to the plaintiff through other means."); *Dana Ltd. v. Am. Axle &*

9    *Mfg. Holdgins, Inc.*, No. 1:10-CV-450, 2012 WL 2524008, at *6 (W.D. Mich. June 29,

10   2012)(holding there was no CFAA damage where deleted files could be recovered).

11          This is as it should be and is what the Rule of Lenity requires. Otherwise, the definition

12   of damage under the CFAA becomes dangerously broad and would permit felony prosecutions

13   for editing Microsoft Word documents without someone's permission, even though a saved

14   version of the document existed. And that is essentially what the government is prosecuting in

15   this case: the editing of a text file that a saved version existed for. This is not what the damage

16   provision of the CFAA was meant to address, as evidenced by its legislative history. The

17   legislative history of the CFAA states that where data can be returned to its "original condition . .

18   . arguably … neither the computer nor its information is damaged." *See* S. REP. 104-357 at 11

19   (1996) (discussing the difference between CFAA loss and damage).

20          Because the edits Mr. Keys allegedly made to the LA Times website were quickly

21   restored to their original condition no damage can be alleged under the CFAA. Thus, the

22   government cannot establish that § 1030(a)(5)(A) has been violated.

23

1   **III.   Whether the alleged CFAA loss was "reasonably" incurred**
2           The CFAA defines "loss" as "any *reasonable* cost to any victim, including the cost of

3   responding to an offense, conducting a damage assessment, and restoring the data, program,

4   system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or

5   other consequential damages incurred because of interruption of service." 18 U.S.C. §

6   1030(e)(11) (emphasis added). To the extent the Government can establish loss under CFAA,

7   they will additionally need to prove that the loss was reasonably incurred. The defense

8   specifically plans to challenge whether it was reasonable for (a) highly compensated and non-

9   technical executives to dedicate significant time investigating the CFAA violation, (b) whether

10  the means and methods of remediating the CFAA violation constituted an efficient use of time

11  and resources, (c) whether significantly lower cost alternatives were readily available, and (d)

12  whether the methods used were a necessary response to the alleged computer intrusion.

13
14  DATED:          September 21, 2015            Respectfully submitted,

15                                               /s/ Tor Ekeland
16                                               Tor Ekeland
17                                               Tor Ekeland, P.C.
18                                               195 Plymouth Street, 5th Floor
19                                               Brooklyn, NY 11201
20                                               tor@torekeland.com
21                                               Tel: 718-737-7264
22                                               Fax: 718-504-5147
23
24                                               Jason S. Leiderman, SBN 203336
25                                               jay@criminal-lawyer.me
26                                               Law Office of Jay Leiderman
27                                               5740 Ralston Street, Suite 300
28                                               Ventura, California 93003
29                                               Tel:  805-654-0200
30                                               Fax: 805-654-0280