Jason S. Leiderman (SBN 203336)
Law Office of Jay Leiderman
5740 Ralston Street, Suite 300
Ventura, CA 93003
Telephone: (805) 654-0200

Tor Ekeland (PHV)
Mark Jaffe (PHV)
195 Plymouth Street, Fifth Floor
Brooklyn, New York 11201
Telephone: (718) 737-7264

*Pro Bono Attorneys for Defendant Matthew Keys*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> MATTHEW KEYS, ) <br> ) <br> Defendant. ) <br> ) <br> ) | Case No. 1:13-CR-0082 (KJM) <br><br> DEFENDANT'S FORMAL OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM |

**TO THE COURT AND THE UNITED STATES, THROUGH THE UNITED STATES ATTORNEY:**

Defendant Matthew Keys ("Defendant" or "Mr. Keys") sets forth his objections below to the Presentence Report, and his positions as to the sentence this Court should impose. Mr. Keys believes the sentencing guideline range on page 3 of the Presentence Report ("PSR") does not accurately compute his advisory sentencing guidelines.

The PSR recommends a sentence of 87 months, 60 for Count 1 and 87 for Counts 2 & 3 concurrently, based on a guidelines offense level of 29 and a criminal history category of I. The Defense believes these calculations are based on inaccurate loss calculations, and that Mr. Keys should receive a sentence of probation in consideration of his objections and the factors under 18 U.S.C. § 3553(a).

To the extent not encompassed below and that they are still relevant, Mr. Keys reiterates all his objections made in his Federal Rule of Criminal Procedure 32(f) letter addressed to United States Probation Officer Nisha Modica. (ECF 127-5).

Mr. Keys objects to a number of the guidelines recommendations the PSR makes, largely on the basis that they are based on allegations that have little or nothing to do with the Computer Fraud and Abuse Act ("CFAA") violations he was charged with. Mr. Keys was charged with and convicted of conspiracy to violate, attempt to violate, and actually violating 18 U.S.C. § 1030(a)(5)(A), which forbids "know[ing] . . . transmission of a program, information, code, or command, [the result of which] intentionally causes damage without authorization to a protected computer." He was not charged, nor was he convicted of, unauthorized access to a computer and obtaining information, which is covered by an entirely different section of the CFAA. *See e.g.,* 18 U.S.C. § 1030(a)(2)(C).

The government's introduction, in its Superseding Indictment, of facts extraneous to the charged conduct of knowing transmission of a code that thereby causes intentional damage to a protected computer caused significant confusion at trial. These facts are more properly the province of an unauthorized access and obtaining information charge, and undoubtedly this will be a significant issue on appeal. The confusion caused by the government's muddying of the waters at trial, by using irrelevant conduct by Mr. Keys, is evident in the PSR, and therefore Mr. Keys objects to the following:

### I. Specific Objections and Corrections (by corresponding PSR paragraph number)

¶ 1   Mr. Keys objects to the characterization of Counts 2 and 3 as involving the "Transmission of Malicious Code," as the phrase "Malicious Code" appears nowhere in 18 U.S.C. § 1030(a)(5)(A), or 18 U.S.C. 1030 (the "CFAA") generally, and is an unduly prejudicial description of the charged conduct.

¶ 4   Mr. Keys objects to the fact that the trial record was not consulted in drafting the PSR, but that it is almost exclusively based on information provided by the United States Attorneys' Office without any apparent attempt to verify that information against the record.

¶5    Mr. Keys objects to the characterization that he had a "fight in the newsroom," in as much as it implies physical violence was involved, as there is nothing in the trial record to support this. Additionally, Mr. Keys objects to the synopsis in paragraph 5 on the same grounds as the Defense's standing relevancy objection made at trial, namely that it describes conduct irrelevant to the charged conduct. Most of paragraph 5 describes an unauthorized access to a computer fact pattern under the CFAA (for example, under 18 U.S.C. § 1030(a)(2)(C)) in relation to Fox40, and not the charged conduct of conspiracy to violate, actually violating, and attempting to violate 18 U.S.C. § 1030(a)(5)(A) by knowing transmission of a code that thereby causes unauthorized damage to a protected computer. Defendant further objects to the allegation that his actions resulted in "a substantial loss to Tribune Media" as the jury never determined anything regarding the CFAA loss beyond finding that it exceeded the CFAA felony threshold of $5,000.00. *See* 18 U.S.C. § 1030(c)(4)(B)(i).

¶ 6    Mr. Keys objects to the incorrect allegation that he used his login credentials to "construct back-door access points to allow intrusions into the CMS." The evidence at trial did not establish that any "back-doors" were created, only that valid, functioning user names and passwords were used and created in accessing the Tribune Media Company's Content Management System ("CMS").

¶ 7    Mr. Keys objects to the following factual allegations:

- That he deleted any Twitter followers from the Fox40 Twitter account.
- The he "accessed without authorization" the CMS and "stole the Fox40 News customer email list". He was not charged with unauthorized access, data theft, or misappropriation, nor were those allegations proven at trial. Moreover, those allegations are wholly irrelevant to an unauthorized damage to a protected computer CFAA charge under 18 U.S.C. § 1030(a)(5)(A).
- That he he sent emails with the intent to "disrupt the business operations" of Fox40.

3

- That his emails had the effect of engendering "hostility and distrust among viewers" as there was no testimony from any Fox40 viewers at trial and as such the allegation unsupported and highly speculative.

¶ 8     Mr. Keys objects to the characterization of Ms. Cohen's trial testimony as establishing that she could not log into the CMS for "approximately one week". On cross-examination Ms. Cohen testified that she was able to access the CMS multiple times during the week in question, and that were access was promptly restored each time she was unable to log in. The evidence at trial supports the proposition that she was logged out of the CMS for a total of approximately three hours during a one-week period.

¶ 10    Mr. Keys again objects to the characterization of the edit to the Los Angeles Times website story on tax cuts in question here as an instance of "unauthorized" access as the question of unauthorized access was never litigated at trial, nor was it a fact the jury was asked to find, because it is not an element of 18 U.S.C. § 1030(a)(5)(A).

¶¶ 14-15    Mr. Keys objects to the loss figures and calculation on the grounds that (1) they are largely based on unsubstantiated hearsay; and (2) they do not constitute loss under the CFAA because they are unrelated to the charged damage to Tribune Media Company's Servers. To the extent the Court is going to rely the loss figures in paragraphs 14-15 Mr. Keys requests the opportunity to subpoena Tribune Media for the underlying documentation for, and cross examine relevant witnesses, related to these loss figures.

The PSR is correct in excluding present and future Tribune Media Company revenue from its loss calculation. The court in *Farmers Ins. Exch.* held that "harm in the form of lost present and future business revenue" in a calculation of CFAA loss is inadmissible where the harm was not directly related to either interruption or damage to a computer system. *Farmers Ins. Exch. v. Steele Ins. Agency, Inc* No. 2:13-CV-00784-MCE, 2013 WL 3872950, at *21-22 (E.D. Cal. July 25, 2013). Additionally, the court in *BHRAC, LLC v. Regency Car Rentals, LLC*, No. CV 15-865-GHK MANX, 2015 WL 3561671, at *3

(C.D. Cal. June 4, 2015) excluded business losses that resulted from theft of information that allowed the defendant to poach plaintiff's customers. The *BHRAC* court reasoned that the lost revenue was "not the sort of injury for which the CFAA provides a remedy" as it was not caused by "an interruption of service" but only the misuse or misappropriation of information. *See id.* Thus, under the CFAA, the vast majority, if not all, of the loss alleged by Tribune Media Company is not cognizable.

The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

To allege loss under the CFAA "plaintiffs must identify impairment of or damage to the computer system that was accessed without authorization … costs not related to computer impairment or computer damages are not compensable under the CFAA." *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-CV-00784-MCE, 2013 WL 3872950, at *21-22 (E.D. Cal. July 25, 2013); *see also AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010 (finding clear congressional intent to limit loss to "the traditional computer 'hacker' scenario—where the hacker deletes information, infects computers, or crashes networks."); *New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS, 2014 WL 2988271, at *7 (C.D. Cal. June 30, 2014 ("Subsequent economic damage unrelated to the computer itself does not constitute loss."); *Sprint Solutions Inc. v. Pac. Cellupage Inc.*, No. 2:13-CV-07862-CAS, 2014 WL 3715122, at *6 (C.D. Cal. July 21, 2014) ("business loss . . . is not a cognizable loss under the CFAA.").

For these reasons, Mr. Keys objects to all the asserted loss numbers. They do not constitute loss under the CFAA, because they are not reasonably related to the charged crime in question and, even if they were, they lack any sufficient evidentiary basis. Specifically, without limitation, Mr. Keys objects to the inclusion in his loss calculation of the $200,000.00 figure to "locate vendor and rebuild new database" as there is nothing in the record to support the allegation that any database related to the LA

Times news story edit was destroyed. Nor does the PSR identify the database in question or describe how it was damaged, and how and why it was rebuilt. The evidence at trial did not establish that any database was destroyed. All of the loss numbers in paragraphs 14-15 are unsupported by any solid evidentiary foundation and should be excluded from the report.

Mr. Keys further objects to the description in paragraph 14 of the testimony of the Tribune Media Company employees, particularly the characterization that they testified about the difficulties in "ensuring that all rogue accounts had been deleted" which omits the key fact that this stemmed largely from the fact that Tribune Media Company had a large number of active accounts for ex-employees that had not been deactivated after an employee left, and that, only after the alleged events did Tribune Media Company spend significant time deleting ex-employee accounts that should have been previously deactivated. Additionally, Mr. Keys objects to any allegation that "back-doors" were placed anywhere on the CMS.

¶ 17   Mr. Keys reiterates his objection to the loss amount.

¶ 24   Mr. Keys reiterates his objection to the loss amount and the 10 level increase in his guidelines range.

¶ 25   Mr. Keys objects to the 2 level enhancement under USSG §2B1.1(b)(10) for allegedly engaging in fraud and using "fake" email addresses. First, Mr. Keys was not charged with fraud. Second, there is nothing fraudulent or illegal about using an email address that does not contain one's own name. In fact, it is extremely common for people to use email addresses that are based on things other than their names. Third, there was no evidence at trial that Mr. Keys set up the email addresses and proxy in order to evade law enforcement or regulatory authorities. Fourth, the use of a proxy server, or VPN, is an activity that a large number of computer users worldwide engage in daily, for wholly legitimate and non-fraudulent purposes. Finally, no sophisticated means was used to commit these acts. The crime was nothing more than the passing of a username and password to an individual in an Internet Relay Chat ("IRC") channel. Given the state of Tribune Media Company's CMS information security,

no sophisticated means was necessary and none was used. Therefore, the 2 level enhancement for engaging in a fraudulent activity and use of a sophisticated means is unwarranted.

¶ 26 Mr. Keys objects to the two level enhancement to his guidelines calculation under USSG §2B1.1(b)(10) on the basis that "the offense involved intent to obtain personal information or the unauthorized public dissemination of personal information." The CFAA section in question here, 18 U.S.C. § 1030(a)(5)(A) involves knowing, unauthorized damage to a protected computer. Unlike other provisions of the CFAA, such as 1030(a)(2)(C), intentionally obtaining information is not an element of 1030(a)(5)(A). Thus, it cannot be maintained that the offense Mr. Keys was involved in had anything to do with obtaining personal information. The email list that apparently forms the basis for the allegation played no role in the edit to the LA Times website. Moreover, there was no evidence at trial that the email address list was ever disseminated. Once again, the government's introduction of alleged, irrelevant conduct has caused unnecessary and prejudicial confusion.

¶ 29 Mr. Keys objects to the three level enhancement under USSG §3B1.1(b) for "being the manager or supervisor involving 5 or more participants" as he was neither a manager or supervisor of anyone in Anonymous, the number of participants in the conspiracy was never established at trial, and the record indicates that fewer than 5 participated.

¶ 30 Mr. Keys objects to the two level enhancement under USSG §3B1.3 on the basis that he "took criminal advantage of an opportunity that was not easily afforded to other persons" as the record demonstrates that Tribune Media Company widely distributed usernames and passwords to its CMS and in many instances did not de-activate usernames and passwords of ex-employees.

¶ 35 Given the foregoing objections, Mr. Keys submits his proper offense level is 10.

¶ 57 Contrary to the allegation in paragraph 57, Mr. Keys sold numerous news stories in the last year.

¶ 75 Mr. Keys reiterates his objections to the PSR guidelines calculations and submits that probation is an appropriate sentence in this matter as he has been on supervised release now for roughly

two years without incident.

¶ 80 Mr. Keys reiterates his objections, contained above in his objections to paragraphs 14-15 of the PSR, to the restitution amount.

¶ 84 Mr. Keys submits that probation is warranted in this matter.

¶ 87 Mr. Keys objects to the conclusion that a departure from the applicable guidelines range is unwarranted. The crime involves an individual changing a few words to an LA Times website story about tax cuts. The article was restored to its original state within 40 minutes. Imposing a sentence of over seven years and roughly $250,000.00 in speculative restitution is a draconian sentence for a minor occurrence that could have been more appropriately handled by a civil lawsuit instead of three federal felony criminal convictions.

¶ 88   Mr. Keys has been free for the entire time from his initial Indictment in 2013 until his trial in October, 2015. During that period, he appeared for every court appearance and committed no crimes, using a computer or otherwise. He continues to work diligently and ethically as a journalist. A downward departure is warranted given the fact that Mr. Keys demonstrated that he will abide by any terms imposed by the Court. Mr. Keys has no prior criminal record and is not by any stretch a skilled hacker, yet the sentence being recommended is on par with violent felonies.

¶ 90   Notorious revenge porn pioneer Hunter Moore recently pled guilty to two felony CFAA charges involving his illegal acquisition and distribution of nude photos of women. Mr. Moore was sentenced to 2 ½ years in prison. *See* http://www.theverge.com/2015/12/3/9843038/hunter-moore-revenge-porn-is-anyone-up-prison-sentence. Mr. Moore's behavior was far worse and far more harmful than what Mr. Keys has been convicted of, as it involved the ongoing, massive exploitation of women on the Internet, rather than an innocuous and short-lived edit to an LA Times story on tax cuts. The disparity in the recommended sentence for Mr. Keys of over seven years in comparison to the 2 ½ year sentence received by Mr. Moore warrants a downward departure.

**CONCLUSION**

1  In light of all of Defendant's objections and the relevant statutory factors in 18 U.S.C § 3553(a), the court should impose a sentence of probation.

Respectfully submitted,

Dated: January 6, 2016

/s/ Tor Ekeland

Tor Ekeland (PHV)
Mark Jaffe (PHV)
195 Plymouth Street, Fifth Floor
Brooklyn, New York 11201
Telephone: (718) 737-7264

Jason S. Leiderman (SBN 203336)
Law Office of Jay Leiderman
5740 Ralston Street, Suite 300
Ventura, CA 93003
Telephone: (805) 654-0200