IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE KIMBERLY J. MUELLER, JUDGE

---o0o---

UNITED STATES OF AMERICA,

            Plaintiff,

vs.                                 No. 2:13-CR-00082

MATTHEW KEYS,                 Volume 8
                                 Pages 928 through 952

               Defendant.
_____/

---o0o---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

JURY TRIAL

VOLUME 8

WEDNESDAY, OCTOBER 7, 2015, 8:30 A.M.

---o0o---

For the Government:     BENJAMIN B. WAGNER, U.S. ATTORNEY
                      501 I Street, Suite 10-100
                      Sacramento, California  95814
                      BY:  MATTHEW DEAN SEGAL
                      and  PAUL ANDREW HEMESATH
                      Assistant United States Attorneys

(Appearances continued next page...)

Reported by:     KATHY L. SWINHART, CSR #10150
              Official Court Reporter, 916-446-1347
              501 I Street, Room 4-200
              Sacramento, California  95814

1                     APPEARANCES (Continued)

2

3    For the Government:     UNITED STATES DEPARTMENT OF JUSTICE
                             Computer Crime and Intellectual
                             Property Section
4                            1301 New York Avenue NW, Suite 600
                             Washington, D.C.  20530
5                            BY:  JAMES ANTHONY SILVER
                             Deputy Chief
6

7    For the Defendant:      LAW OFFICES OF JAY LEIDERMAN
                             5740 Ralston Street, Suite 300
8                            Ventura, California  93003
                             BY:  JASON SCOTT LEIDERMAN
9
                             TOR EKELAND, P.C.
10                           195 Plymouth Street, Fifth Floor
                             Brooklyn, New York  11201
11                           BY:  MARK H. JAFFE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              <u>INDEX</u>

2                                                    <u>PAGE:</u>

3
    JURY NOTE                                         932
4   JURY VERDICT                                      943

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        SACRAMENTO, CALIFORNIA

2     WEDNESDAY, OCTOBER 7, 2015, 10:36 A.M.

3             ---o0o---

4     (Jury not present.)

5        THE CLERK:  Calling criminal case 13-82, the United

6  States versus Matthew Keys.  This is on for a jury trial, and

7  today is date eight.

8        THE COURT:  All right.

9        MR. SEGAL:  Good morning, Your Honor.  Matthew Segal

10  and James Silver for the United States.

11        THE COURT:  All right.

12        MR. LEIDERMAN:  Jay Leiderman and Mark Jaffe for

13  defendant Matthew Keys, who is present.

14        THE COURT:  All right.  Good morning.  Two issues.

15        One, the corrected instructions 15 and 25, they are

16  relatively minor corrections.  But I do believe, given what

17  I've heard of the parties' responses, I'm prepared to provide

18  those to the jury.

19        So instruction No. 15, and referring back to the

20  discussion the Court had with counsel during the jury

21  instruction conferences, the language "content management

22  system" would appear on pages 10 through 11.  And then on

23  page -- I'm sorry.  On instruction No. 25, the pagination has

24  changed on what I have.  I've corrected to make crimes

25  singular, and then the key change is at line 14.

1          So my understanding is there are no objections to those

2     changes.

3          What is the parties' position as to whether or not the

4     underlining should appear to signal to the jury the correction?

5     Mr. Segal?

6          MR. SEGAL:  I think it should not appear.  If this is

7     all that's going back, then -- well, let me ask.  Does the jury

8     have the current 15 and 25?

9          THE COURT:  Yes, they each have their own sets in their

10    binders.

11         I don't know that these are material.  It occurred to

12    me, particularly looking at instruction No. 5, that there is an

13    internal inconsistency.  And I just didn't want them getting

14    hung up on the language that was vestidual language retained in

15    that third paragraph.

16         MR. SEGAL:  Well --

17         THE COURT:  If you think it's not material and would

18    not make a difference, we don't need to provide the

19    corrections.  I just wanted to highlight that issue with

20    counsel now if there were still time to address that with the

21    jury.

22         MR. SEGAL:  I don't think that you should send back

23    underlining of particular instructions because that risks

24    emphasizing that instruction over others.  And especially if

25    the Court sends it back and it's underlined, it could have the

1    effect of making it seem more important.

2           And then the question is do we want to send back a

3    correction.  That's fine with us.  I think this is an accurate

4    statement of the law.  The indictment is as to damaging the

5    computer system used by the Tribune Company, but the computer

6    system presented at trial was the content management system, so

7    I don't care either way.

8           I'm curious what the defense position is on this.

9           THE COURT:  Mr. Jaffe, you're handling this, or

10   Mr. Leiderman?

11          MR. JAFFE:  We have no objections to the changes.

12          With respect to the content management system, we think

13   that is a more accurate description of what is at issue here.

14   I think it said computer management system based on a statement

15   I made when we argued the jury instructions, and it was an

16   error when I said that.

17          So the defense agrees with the corrections made.  The

18   defense does not have a strong position on whether or not it

19   should be underlined.  I am mindful of the Court's -- of the

20   government's concern about placing undue emphasis on these

21   changes for the purpose of the jury.  But, on the other hand,

22   if we send them a corrected instruction, the jury may very well

23   want to know where that change is.

24          And so we leave that up to the --

25          THE COURT:  I think that's the fundamental question.

1    Are these material changes?  Mr. Segal?

2            MR. JAFFE:  No.

3            MR. SEGAL:  If that's fine, then do nothing.

4            THE COURT:  I think that's the question, which is -- I

5    just want to -- again, I wanted to highlight it.

6            MR. SEGAL:  As between sending back underlined versions

7    and doing nothing, I would prefer that the Court do nothing.

8            THE COURT:  But the third option is sending back

9    corrected versions without any underlining --

10           MR. SEGAL:  Right.

11           THE COURT:  -- but still understanding it's corrected.

12   That's the third option.

13           Would you still do nothing?

14           MR. SEGAL:  If the defendant wants option three, I

15   think you should do it.  Otherwise I think you should do

16   nothing.

17           MR. LEIDERMAN:  Let's take -- option three seems the

18   most prudent, Your Honor, from where we stand.

19           THE COURT:  All right.  So send in the corrected

20   versions, no underlining?

21           MR. LEIDERMAN:  Corrected version with no underlining.

22           Our concern about the underlining is, A, it may cause

23   too many problems.  And, you know, the concern without the

24   underlining is, of course, they're going to look all over for

25   it, but I'd rather it have the regular instruction.

1          THE COURT:  All right.

2          MR. SEGAL:  You can say --

3          THE COURT:  I'll craft very -- I'll just indicate the

4     Court has identified minor corrections in two jury

5     instructions.  Here are copies of the corrected instructions.

6     They should be read just as you would have read the original in

7     the context of all the other jury instructions.

8          MR. LEIDERMAN:  That will be just fine.

9          THE COURT:  I'll craft something.

10          On the jury note --

11          MR. SEGAL:  Yes.

12          THE COURT:  -- which appears to be coming from a juror,

13     what's your position on that, Mr. Segal?

14          MR. SEGAL:  We have a computer here.  We're ready to

15     go.

16          THE COURT:  Which would be in the courtroom?

17          MR. SEGAL:  Yes.

18          THE COURT:  All right.  Mr. Leiderman, Mr. Jaffe?

19          MR. LEIDERMAN:  We don't have a position.  If they're

20     ready to go, we're ready to go.

21          THE COURT:  All right.  So I understand the jury took a

22     break immediately after writing this note, so I would let them

23     know that the Court would be prepared to bring them back into

24     the courtroom and play the audios.

25          What's the total time that would take?

1          MR. SEGAL:  One of them is 40 minutes.  The Mercer call

2     is about 40, 45 minutes, and then the excerpts might go up --

3     might bring it up to an hour.  That's just -- that's my guess

4     based on my recollection.

5          THE COURT:  So my thought would be -- I have two pleas

6     waiting.  My thought would be to see if I can get through those

7     and then play them.

8          What's the parties' position?  I hate to keep the jury

9     waiting, but I do think this has to be done in the courtroom.

10         MR. SEGAL:  I agree with both of those things.

11         THE COURT:  I could see if there's a magistrate judge

12    or a colleague available to monitor playing in a different

13    courtroom.  We are set up in this courtroom.

14         MR. SEGAL:  Or take the Rule 11s.

15         THE COURT:  Pardon me?

16         MR. SEGAL:  Or have the colleague take the Rule 11s.

17         THE COURT:  Well, that's a policy discussion that has

18    been discussed for many years.

19         MR. SEGAL:  Okay.

20         THE COURT:  That's the only way to get this going more

21    quickly I think, all things considered, given that I have

22    defendants with interpreters awaiting to take pleas.

23         So do you want me to try to find a colleague to monitor

24    the playing?

25         MR. SEGAL:  I think --

1          THE COURT:  Or wait until -- it would be 11:30 or so, I

2    think, the earliest.

3       (Off-the-record discussion with Courtroom Deputy.)

4          MR. SEGAL:  I think if a district judge happens to --

5    it's a trial matter.  If a district judge is available, that's

6    fine with us.  On the other hand, if you want to tell the jury

7    that -- give the jury the choice to be -- that they should

8    continue deliberating, and we'll play it at 11:30, we can be

9    ready at 11:30.

10          THE COURT:  I think that's probably the most practical.

11          Does that work for you?

12          MR. LEIDERMAN:  Oh, no, that will work just fine for

13    us.

14          THE COURT:  All right.  Let me craft short notes.

15    We'll show them to you.  If there are no objections, they'll go

16    to the jury.  And then we will re-call the criminal calendar in

17    about five or ten minutes.

18          MR. SEGAL:  Thank you, Your Honor.

19       (Off the record.)

20          THE CLERK:  Come to order.  Court is back in session.

21          THE COURT:  All right.  We're back on the record in the

22    Keys matter.

23          Did you want to call the matter, Ms. Schultz?

24          THE CLERK:  Your Honor, I did it this morning.

25          THE COURT:  All right.  Just so it's clear, we're

1     continuing from this morning.

2            All right.  Two things.  I'm going to read a portion of

3     Ninth Circuit instruction 7.10.  I'm going to read only a

4     portion of it, but it will read like this.  Let me know if you

5     have any objection.

6            Because a request has been made for a play back, it is

7     being provided to you.  But you are cautioned that all play

8     backs run the risk of distorting the trial because of

9     overemphasis on one portion of the evidence.  In your exercise

10    of judgment, the recordings played cannot be considered in

11    isolation, but must be considered in the context of all the

12    evidence presented.

13           Any objection to the giving of that cautionary

14    instruction, Mr. Segal?

15           MR. SEGAL:  No, Your Honor.

16           THE COURT:  Mr. Leiderman?

17           MR. LEIDERMAN:  Not by the defense.

18           THE COURT:  All right.  All right.  We'll bring the

19    jury in.

20           You think under an hour, Mr. Segal, or an hour?

21           MR. LEIDERMAN:  I think it was an hour.  The Mercer

22    call was 47 minutes, and I think they played 15 to 20 minutes

23    worth of clips.  But --

24           THE COURT:  All right.  So a little more than an hour.

25    All right.

1          MR. SEGAL:  Does the Court want the Mercer call first?

2          THE COURT:  That was the order in which it appeared in

3    the note, so that's fine.  So the Mercer call first and then

4    Cauthen conversation excerpts.

5          I'm going to tell the jury, if they want, they can just

6    manage themselves.  They should be in their seats, but if they

7    need to stand during the playing, they may do so.  The Court

8    may stand.

9          And if counsel wants to stand --

10          MR. LEIDERMAN:  Thank you.

11          THE COURT:  -- or Mr. Keys wants to stand, that's fine

12    with me.

13          All right.  Let's bring the jury in.

14          And so can we agree the Court Reporter doesn't need to

15    take down the contents of the recording?

16          MR. SEGAL:  Yes.

17          MR. LEIDERMAN:  Yes, stipulated.

18          THE COURT:  All right.

19          MR. SEGAL:  We'll just put in what exhibit they are as

20    we play them.

21          THE COURT:  What does that mean?

22          MR. SEGAL:  Each recording has an exhibit number.

23          THE COURT:  So you'll read the number?

24          MR. SEGAL:  Yes.

25          THE COURT:  Any objection to that?

1          MR. LEIDERMAN:  That's fine.

2          THE COURT:  All right.

3          MR. SEGAL:  And maybe the clerk could confirm, 222 is

4    in, isn't it?

5          THE COURT:  If you need to confer with --

6          MR. SEGAL:  I'll do that while the long one is playing.

7       (Jury present.)

8          THE COURT:  Welcome back, Ladies and Gentlemen of the

9    jury.  Those of you in the courtroom may be seated.

10         As you know from my note, given the request to hear the

11   recordings, the recording made by Mr. Mercer and then the

12   excerpts of the interview, the recording made by Agent Cauthen,

13   we're going to play those for you now.

14         Let me just make certain you understand, it is because

15   a request has been made the play backs of recordings are being

16   provided to you.  But you are cautioned that all play backs run

17   the risk of distorting the trial because of overemphasis of one

18   portion of the evidence.  In your exercise of judgment, the

19   recordings cannot be considered in isolation, but must be

20   considered in the context of all of the evidence presented.

21         So with that, I'm advised that the total time required

22   is just over one hour.  We'll first play the Mercer recording.

23   The government will simply identify the exhibit number to which

24   it corresponds.  Then we'll play the excerpts of the Cauthen

25   recording.  Again, the government will identify the exhibit

1    numbers to which those excerpts correspond.

2         And if you need during that time to stand, feel free to

3    do so in place.  In fact, the Court may stand because I'm

4    feeling the need to do that given the amount of sitting I've

5    done this week.

6         All right.  The government's ready to play those?

7         MR. SEGAL:  Yes, Your Honor.  We'll play Government

8    Exhibit 201 first, please.

9         THE COURT:  All right.

10     (Exhibit 201 played, not reported.)

11        THE COURT:  That concludes that recording?

12        MR. SEGAL:  It does, Your Honor.

13        THE COURT:  So now the excerpts from the Cauthen

14   interview.  Let's go through those in order.

15        MR. SEGAL:  206.

16        May I just call these out from my seat, Your Honor?

17        THE COURT:  Yes, you may.

18     (Exhibit 206 played, not reported.)

19        MR. SEGAL:  207.

20     (Exhibit 207 played, not reported.)

21        MR. SEGAL:  208.

22     (Exhibit 208 played, not reported.)

23        MR. SEGAL:  209.

24     (Exhibit 209 played, not reported.)

25        MR. SEGAL:  210, please.

1      (Exhibit 210 played, not reported.)

2          MR. SEGAL:   211, please.

3      (Exhibit 211 played, not reported.)

4          MR. SEGAL:   212, please.

5      (Exhibit 212 played, not reported.)

6          MR. SEGAL:   214 -- or 213, please.

7      (Exhibit 213 played, not reported.)

8          MR. SEGAL:   214, please.

9      (Exhibit 214 played, not reported.)

10          MR. SEGAL:   215, please.

11      (Exhibit 215 played, not reported.)

12          MR. SEGAL:   216.

13      (Exhibit 216 played, not reported.)

14          THE COURT:   Is that the last recording?

15          MR. SEGAL:   No.   217, Your Honor.

16          THE COURT:   All right.

17      (Exhibit 217 played, not reported.)

18          MR. SEGAL:   218, please.

19      (Exhibit 218 played, not reported.)

20          MR. SEGAL:   219, please.

21      (Exhibit 219 played, not reported.)

22          MR. SEGAL:   220, please.

23      (Exhibit 220 played, not reported.)

24          MR. SEGAL:   221, please.

25      (Exhibit 221 played, not reported.)

```
 1            MR. SEGAL:  223, please.

 2       (Exhibit 223 played, not reported.)

 3            MR. SEGAL:  222.  Sorry, Your Honor, I skipped one.

 4  We've played 221, 223, and now we're going to play 222.

 5            THE COURT:  All right.

 6       (Exhibit 222 played, not reported.)

 7            MR. SEGAL:  224, please.

 8       (Exhibit 224 played, not reported.)

 9            MR. SEGAL:  225, please.

10       (Exhibit 225 played, not reported.)

11            MR. SEGAL:  226, please.

12       (Exhibit 226 played, not reported.)

13            MR. SEGAL:  227, please.

14       (Exhibit 227 played, not reported.)

15            MR. SEGAL:  228, please.

16       (Exhibit 228 played, not reported.)

17            MR. SEGAL:  229, please.

18       (Exhibit 229 played, not reported.)

19            MR. SEGAL:  230, please.

20       (Exhibit 230 played, not reported.)

21            MR. SEGAL:  231.

22       (Exhibit 231 played, not reported.)

23            MR. SEGAL:  232, please.

24       (Exhibit 232 played, not reported.)

25            THE COURT:  That concludes the recordings?
```

1           MR. SEGAL:  Yes, Your Honor.

2           THE COURT:  All right.  Agreed, Mr. Leiderman?

3           MR. LEIDERMAN:  It seems to.

4           THE COURT:  All right.  Ladies and Gentlemen of the

5  jury, those are the recordings you had requested be played.

6  Again, please bear in mind that these recordings cannot be

7  considered in isolation.  They must be considered in the

8  context of all of the evidence presented.

9           Also, some of you have taken notes here this afternoon.

10 I previously gave you an instruction about notes.  Please

11 review that again.  Notes are only to assist your memory.

12          And my instructions are to be read as a whole, as the

13 evidence is to be considered in totality.

14          You are excused now to continue your deliberations.

15 Thank you.

16     (Jury not present.)

17          THE COURT:  All right.  We'll keep you posted.

18          MR. SEGAL:  Thank you, Your Honor.

19          THE COURT:  I'm assuming the latest we'll go is 5:00.

20 My practice is to call them in at the end of each day and give

21 them the cautionary admonition.  We'll let you know.  If we

22 don't hear before 5:00, I would expect to call them in about

23 5:00.

24          All right?

25          MR. LEIDERMAN:  We'll see what happens.

1           THE COURT:  Thank you.

2      (Off the record.)

3      (Jury not present.)

4           THE CLERK:  Calling criminal matter 13-82, the United

5      States versus Matthew Keys.

6           THE COURT:  All right.  We're back on the record with

7      Mr. Segal for the government, Mr. Leiderman, Mr. Jaffe, and

8      Mr. Keys is present.

9           The Court has received notification that the jury has

10     reached a verdict.  Here's my practice.  We'll call the jury

11     in.  I'll confirm that with the foreperson.  I'll ask the

12     foreperson to hand the verdict form to Ms. Streeter.  I'll

13     review it for consistency.  And then Ms. Streeter will read it

14     into the record.

15          And then I'll ask the parties if they wish the jury

16     polled.  Either side could have the jury polled.  If so, we'll

17     do that.  Ms. Streeter will do that.

18          And then we will excuse the jurors telling them that

19     they are now free to talk, if they would like.  And then I take

20     a short break, I go into the jury room, and I'll just -- I

21     thank them for their service and give them a certificate of

22     appreciation.  I don't discuss the substance of the trial, but

23     that's the least I can do.  Then I'll come back and consider

24     any motions.

25          So any questions?

1          MR. SEGAL:  No.  You want us to hang around while

2    you're in with the jury?

3          THE COURT:  That would be --

4          MR. SEGAL:  Okay.

5          THE COURT:  It takes me all of five minutes.

6          All right.  So let's bring the jury in.

7          THE CLERK:  Yes, Your Honor.

8       (Jury present.)

9          THE COURT:  You may be seated.

10         Welcome back, Ladies and Gentlemen.  The Clerk

11   understands you have reached a verdict.

12         Ms. Styers, are you the foreperson?

13         JUROR NO. 6:  Yes.

14         THE COURT:  You have the verdict with you?

15         JUROR NO. 6:  Yes.

16         THE COURT:  We'd ask Ms. Streeter to retrieve that from

17   you.

18         THE CLERK:  Thank you.

19         THE COURT:  All right.  The verdict form is in order.

20   I'm going to ask Ms. Streeter to read the verdict into the

21   record.  So listen carefully as it is read.

22         Ms. Streeter.

23         THE CLERK:  Ladies and Gentlemen of the jury, listen to

24   your verdict as it will stand recorded.

25             In the United States District Court, Eastern District

1    of California, United States of America, plaintiff, versus

2    Matthew Keys, defendant, case No. 2:13-CR-82-KJM, verdict form.

3            We, the jury, find the defendant Matthew Keys as

4    follows:

5            As to Count One of the superseding indictment, guilty

6    of conspiracy to transmit a program, code, command or

7    information to a computer intending to cause damage, between on

8    or about December 8th, 2010, and on or about December 15th,

9    2010.

10           If you found the defendant guilty of Count One, do you

11   find beyond a reasonable doubt either that:  One, the defendant

12   could reasonably foresee that the conspiracy could cause loss

13   adding up to $5,000; or, two, causing loss adding up to $5,000

14   fell within the scope of the defendant's particular agreement

15   with his co-conspirator?  Answer:  Yes.

16           As to Count Two of the superseding indictment, guilty

17   of transmitting a program, code, command or information to a

18   computer intending to cause damage, between on or about October

19   28th, 2010, and January 5th, 2011.

20           If you found the defendant guilty of Count Two, do you

21   find beyond a reasonable doubt that the offense caused loss

22   adding up to at least $5,000?  Answer:  Yes.

23           As to Count Three of the superseding indictment,

24   guilty, attempting to transmit a program, code, command or

25   information to a computer intending to cause damage on or about

December 15th, 2010.

If you found the defendant guilty of Count Three, do you find beyond a reasonable doubt that the offense would, if completed, have caused loss adding up to at least $5,000? Answer:  Yes.

Dated October 7th, 2015, signed by foreperson Heather Styers.

THE COURT:  That is the verdict as returned to the Court.  Let me ask if either side would like the jury polled.

Mr. Segal?

MR. SEGAL:  No, Your Honor.  Thank you.

THE COURT:  Mr. Leiderman?

MR. LEIDERMAN:  Yes, Your Honor.

THE COURT:  All right.  Ladies and Gentlemen, the parties do have the right to have the jury polled, which means each one of you asked individually if that is your verdict.  So Ms. Streeter now will poll you as requested.

THE CLERK:  Ladies and Gentlemen of the jury, as I call your name, please answer yes or no to the following question: Is the verdict as read your verdict?

Juror No. 1, Lisa Cale?

JUROR NO. 1:  Yes.

THE CLERK:  Juror No. 2, Gwendolyn James?

JUROR NO. 2:  Yes.

THE CLERK:  Juror No. 3, Theresa McFarland?

946

```
 1            JUROR NO. 3:  Yes.

 2            THE CLERK:  Juror No. 4, Steven Blasy?

 3            JUROR NO. 4:  Yes.

 4            THE CLERK:  Juror No. 5, Adriana Valdez?

 5            JUROR NO. 5:  Yes.

 6            THE CLERK:  Juror No. 6, Heather Styers?

 7            JUROR NO. 6:  Yes.

 8            THE CLERK:  Juror No. 7, Cynthia Stave?

 9            JUROR NO. 7:  Yes.

10            THE CLERK:  Juror No. 8, Sherry Babchuk?

11            JUROR NO. 8:  Yes.

12            THE CLERK:  Juror No. 9, Anna Biggers?

13            JUROR NO. 9:  Yes.

14            THE CLERK:  Juror No. 10, Shannah Whithaus?

15            JUROR NO. 10:  Yes.

16            THE CLERK:  Juror No. 11, Jeanine Hanrihan?

17            JUROR NO. 11:  Yes.

18            THE CLERK:  Juror No. 12, Detria Sanders?

19            JUROR NO. 12:  Yes.

20            THE CLERK:  All affirmative say the verdict is

21    unanimous, Your Honor.

22            THE COURT:  All right.  May this jury now be excused,

23    Mr. Segal?

24            MR. SEGAL:  Yes, Your Honor.  Thank you.

25            THE COURT:  Mr. Leiderman?
```

1          MR. LEIDERMAN:  Yes, Your Honor.  Thank you.

2          THE COURT:  Ladies and Gentlemen, you are excused from

3    your service on this jury.  The Court and counsel and the

4    parties thank you very much for your diligent service.

5          As you leave, two things.  One, I would ask you to wait

6    for me in the jury room just very briefly along with your

7    alternates.  They will be instructed to join you in the jury

8    room.  I just have a simple certificate of appreciation which I

9    give out in every case just as our way of thanking you for your

10   service.  You have exercised a very important right, fulfilled

11   a very important responsibility of American citizenship.

12         Also, as you leave, you are advised that the

13   admonitions I have been giving you throughout trial are now

14   lifted.  That is, you may talk about the case with other

15   persons.  You are not required to, but you are free to discuss

16   the matter including with counsel and the parties, if you wish.

17         All right.  You're excused.  You may go to the jury

18   room.  The alternates I see in the audience.  You may join them

19   in the jury room.  I'll be right there.

20      (Jury not present.)

21         THE COURT:  All right.  You may be seated.

22         MR. SEGAL:  If it might save time, Your Honor, I'm not

23   moving for remand.

24         THE COURT:  You had said that earlier.

25         Are there any other motions at this time?

1          MR. SEGAL:  I'd like to ask for some not completely
2    turning his Internet off, but for some Internet use
3    restrictions.  I think there's disagreement about that, so you
4    will need to hear that.
5          THE COURT:  Today?
6          MR. SEGAL:  It's -- I would prefer that.  But if you
7    want to set it out for a week, I suppose I can live with that
8    also.
9          THE COURT:  Has Mr. Keys been on pre-trial release with
10   conditions?
11         MR. LEIDERMAN:  No.  He hasn't had any conditions
12   for -- you know, I believe we arraigned this in March 2013.  He
13   hasn't had any conditions at all.  And obviously the crime
14   occurred in December of 2010.  There's been no issue whatsoever
15   for, you know, two months short of five years.
16         THE COURT:  Mr. Keys, if you were on pre-trial release,
17   pre-trial release would continue pending sentencing.
18         Any reason to not have him meet with pre-trial
19   services?
20         MR. SEGAL:  I think he should meet with pre-trial
21   services now that he has been convicted.
22         Our view of this all along is he's not a flight risk
23   because he's just not looking at enough time to make himself a
24   flight risk.  But now that he's been convicted, you have to
25   consider danger, and the restrictions that I have in mind are

1    ones that basically require him to identify himself on the

2    Internet.  He shouldn't be using proxy servers.  We'd like the

3    devices that he uses disclosed to the pre-trial services

4    officer.  And this is the kind of thing that I think a

5    pre-trial services interview isn't really necessary for.

6            So OR in one sense.  We don't need a bond.  Again,

7    like, the sentence just isn't going to be long enough to

8    generate a flight risk.  But now that -- under the statute,

9    danger is a consideration.  I think these are the conditions --

10   you want to hear the conditions now, Your Honor?

11           THE COURT:  Well, do you agree that from the time --

12   since March of 2011, is there any evidence that there's been

13   any additional activity --

14           MR. SEGAL:  The last --

15           THE COURT:  -- consistent with the activity supporting

16   the convictions now?

17           MR. SEGAL:  The last time that we checked in with his

18   computer is when we took it in 2012.  Right?  The concern is

19   that he can disguise himself on the Internet pretty easily.

20   Now anybody knows how to use, you know --

21           THE COURT:  No, I understand all that, Mr. Segal.

22           MR. SEGAL:  That's it.

23           THE COURT:  But you had the chance to be monitoring him

24   while he's on --

25           MR. SEGAL:  No, I haven't.  I mean, I couldn't do that

1    without interfering in his attorney-client relationship.

2           And actually, now that you ask, I will say that we did

3    send a document to the -- oh.

4           THE COURT:  I'll tell you what, you can brief this

5    question.

6           MR. SEGAL:  Okay.

7           THE COURT:  Based on what I currently know, given that

8    he's been on OR release this entire time, he has made every

9    appearance, you can file a brief suggesting conditions of

10   release you're saying without pre-trial services supervision

11   pending sentencing.

12          MR. SEGAL:  Well, the supervision would be to inventory

13   the Mac address, IMEI number --

14          THE COURT:  But are you asking that pre-trial services

15   do that or --

16          MR. SEGAL:  They can do it or give a list to us, it

17   doesn't matter to me.  I just want him to know that he can't be

18   anonymous on the Internet anymore.

19          THE COURT:  All right.  At this point, the jury is

20   waiting longer than I had hoped.  So you can file that request.

21   If there's any stipulation to be reached, you can file that

22   stipulation.  I'll consider it.

23          We'll set a sentencing date.  What would that date be,

24   Ms. Streeter?

25          THE CLERK:  January 6th, 2016.

1          MR. LEIDERMAN:  Could we have January 20th, please?

2          THE COURT:  If that's available.

3          THE CLERK:  It is available, yes, ma'am.

4          THE COURT:  Does that work for you, Mr. Segal?

5          MR. SEGAL:  It does, Your Honor.  Thank you.

6          THE COURT:  All right.  So January 20th will be

7    sentencing.

8          Mr. Keys, you may sit for an interview with probation.

9    Probation will prepare a presentence report for the Court.  You

10   may sit with your interview present if you would -- with your

11   attorney present.

12         There are objections -- are you familiar with our

13   presentence report process?

14         MR. LEIDERMAN:  It sounds rather similar to the one

15   down south, but no.  I had heard you describe it earlier today

16   to a different defendant, so you needn't describe it again to

17   me.

18         THE COURT:  All right.  So if you can make certain

19   Mr. Keys understands.

20         And it is essential that you be here on January 20th,

21   Mr. Keys.  You're being released on your own recognizance from

22   this hearing.  The Court may impose conditions based on

23   whatever I decide after the briefing.  I'll rely on your

24   attorney to let you know those conditions.  If I do order them,

25   you'll be subject to those conditions.

1          If you do not appear on January 20th, you could be

2    facing additional charges with additional penalties over and

3    above what you're already facing.

4          Is that understood?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  Anything further today,

7    Mr. Leiderman?

8          MR. LEIDERMAN:  No, Your Honor.  Thank you.

9          THE COURT:  All right.  Thank you.  We're in recess.

10          MR. SEGAL:  Thank you, Your Honor.

11              (Proceedings were concluded at 3:19 p.m.)

12                        ---o0o---

13

14

15

16

17

18

19

20

21

22

23

24

25

1      I certify that the foregoing is a correct transcript from

2  the record of proceedings in the above-entitled matter.

3

4
                              /s/ Kathy L. Swinhart
5                             KATHY L. SWINHART, CSR #10150

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25