# Exhibit 1001

| | |
|---|---|
| **From:** | Cancer Man <cancerman4099@yahoo.co.uk> |
| **Sent:** | Friday, December 03, 2010 12:50 AM |
| **To:** | Mercer, Brandon |
| **Subject:** | Re: I hope you're proud of what you caused in one household tonight. |

obviously the elderly isn't our intended target. perhaps fox40 is in need of a new slogan: "we report to the old folks home." if she's so worried about her husband, why is she worried about her email? seems like the priorities are in the wrong place there.

you'd like for us to have an agenda or a set of demands; that way if this continues and you don't meet the demands, you can claim we're "blackmailing" your station. is that what your buddy charles senate told you? that despite contacting your legal and it departments, you not only can't figure out how we acquired the emails and what the loophole in your registration process is, but you really don't have much legal recourse because nothing false has been stated and no damage is present?

you don't care about our issues. you care about yours. but if you'd like to "make things right," start making some phone calls. you know who you need to get in touch with.

---

**From:** "Mercer, Brandon" <brandon.mercer@fox40.com>
**To:** Cancer Man <cancerman4099@yahoo.co.uk>; Fox Mulder <foxmulder4099@yahoo.co.uk>;
"fox40truthers@gmail.com" <fox40truthers@gmail.com>
**Sent:** Fri, 3 December, 2010 0:07:04
**Subject:** I hope you're proud of what you caused in one household tonight.

I hope you're proud of yourself.

I just had to talk down a crying senior citizen whose husband is in kidney failure.
She's having a panic attack on the phone because of you.
She's so scared of your stupid emails that she's in tears talking with me.
Her husband just started dialysis.... and now you have her worried about her account, and all this mess that she doesn't understand, instead of thinking about her FAMILY.

Are you really trying to scare poor senior citizens with husbands in kidney failure?

Instead of hurting people, how about you tell me what you'd like to see my company do, and I'll see if we can solve the issues you bring up.

How about you stop causing old ladies to go into hysterics and have heart palpitations because of your little agenda. How will you feel if her panic attack accelerates into a heart attack and she dies because of your harassment?

THESE ARE REAL PEOPLE YOU ARE MESSING WITH.
THEY DIDN'T ASK YOU TO CONTACT THEM AND DRAG THEM INTO YOUR LITTLE MANIFESTO.

1

MKP-0099983

Instead, listen to me.   DON'T YOU THINK I CARE ABOUT YOUR ISSUES?
You have me listening.
OBVIOUSLY.
Talk to me, and stop dragging innocent people into your rant.
Tell me what you want to see changed, and we'll see what we can do.

STOP HURTING THE ELDERLY, if you have any soul.
--Brandon
**BRANDON M. MERCER** | News Director
**FOX40 TV:**      On 4:30a-10:00a, 5:30p-6p, 10p-11p
**FOX40.com:**    On right now
**FOX40 Mobile:**   On everywhere
*4655 Fruitridge Road*
*Sacramento, CA 95820-5299*
Newsroom:  **(916) 454-4548**
Direct:       **(916) 733-3105**

---

**From:** Cancer Man [mailto:cancerman4099@yahoo.co.uk]
**Sent:** Thursday, December 02, 2010 11:26 PM
**To:** Mercer, Brandon
**Subject:** Re: the million dollar cash grab scam

leave it to the news director of a FOX station to complain about accuracy or lack thereof. who is your editor.
someone from your buddy company at the sacramento bee?

---

**From:** "Mercer, Brandon" <brandon.mercer@fox40.com>
**To:** Cancer Man <cancerman4099@yahoo.co.uk>
**Sent:** Thu, 2 December, 2010 22:54:16
**Subject:** RE: the million dollar cash grab scam

You have a few typos.  Check "finalist."

Also, it's FOX, not Fox.  Any staff member or former staff member can tell you that.  You
really should have someone proofread your emails.  I know a pretty good editor who might
be available to help you out with your manifestos.   Call me, and I'll get you his
information.

What's your goal here?  You're sending unsolicited email.  Not a good idea.

Also, your information is not accurate, but I have to assume you're not concerned about
accuracy.

--Brandon
**BRANDON M. MERCER** | News Director
**FOX40 TV:**      On 4:30a-10:00a, 5:30p-6p, 10p-11p
**FOX40.com:**    On right now

MKP-0099984

**FOX40 Mobile:** On everywhere
*4655 Fruitridge Road*
*Sacramento, CA 95820-5299*
Newsroom: **(916) 454-4548**
Direct: **(916) 733-3105**

---

**From:** Cancer Man [mailto:cancerman4099@yahoo.co.uk]
**Sent:** Thursday, December 02, 2010 10:25 PM
**Subject:** the million dollar cash grab scam

THE FOLLOWING MESSAGE WILL BE SENT AT MIDNIGHT TONIGHT

Earlier this week, you registered to win an iPad on FOX40.COM in the station's iPad Festivus Giveaway. You may have received an email asking you to watch out for a "very important, very special message."

This is just one in a series of messages you'll receive over the next few days. Do not be alarmed, your email address will not be sold by us to any third-parties, and we don't have any personal identifying information. What Fox 40 or another company chooses to do with your information is up to them.

The chances of you winning an iPad are slim to nil. The contests at Fox 40 are not "rigged" per se, but they are very poorly handled.

Take, for example, Fox 40's "$1 million cash grab" contest held earlier this year as part of a ratings stunt at Fox 40 and several other Tribune-owned stations. The winner? One Dominic Farinha, a former politician who sat on the Patterson City Council. Go ahead, google his name. What more deserving person for a Fox station to award nearly $8,000 to than a former politician?

How did Farinha get to the $1 million pool of cash? Farinha had to be one of several dozen finalist who landed a spot as the 40th caller to a special hotline established by Fox 40. A staff member at Fox 40 was in charge of "opening the phone lines" as soon as the number flashed on the screen. But not everyone saw the number at the same time.

The Fox 40 staffer was usually watching a monitor tuned to Comcast cable channel 8, then the in-house television system for the station. Anyone watching on DirecTV, Dish Network, AT&T UVerse or digital television through an antenna wouldn't see that number for another five to fifteen seconds, depending on the system. By the time those viewers saw the number, the winner had already been declared.

In fact, a Fox 40 producer was in charge of keeping track of every 40th caller "qualifier," and one question they had to ask the qualifier was which method a winner was watching television. The majority of qualifiers said comcast.

Why? Anyone watching on analog Comcast no doubt won the prize, because they had the advantage of seeing the number at the exact same time as the Fox 40 producer.
But why would Fox 40 choose a Comcast system as their method to monitor when a phone number would pop up on a screen? Were they deliberately giving Comcast customers an advantage over others because Comcast --- like Cache Creek Casino, Silverado, and Ikea --- pour more money into Fox 40 television than any other advertiser in the Sacramento area?

Fox 40's close-knit relationship with Comcast meant analog cable subscribers saw an upper-hand at a chance to

3

MKP-0099985

win $1 million, while other subscribers were left at a disadvantage.

So what does this mean abut the station's handling of the ipad giveaway to coincide with the fictitious holiday Festivus? Look for another message from us soon.

MKP-0099986

# Exhibit 1002


OFFICIAL RECORD
Document participants have digitally signed.
All signatures have been verified by a
certified FBI information system.

### FEDERAL BUREAU OF INVESTIGATION

Date of entry    01/07/2015

**SENSITIVE PATIENT MEDICAL INFORMATION**
Maintain and use only if necessary for official duties and disseminate only to persons
with a need to know; safeguard and protect from inadvertent disclosure.


Jerry DelCore, previously interviewed, met with writer at his office
located in Sacramento, CA and provided documents.  Copies of the documents
are attached hereto as 1A evidence. The documents included emails, a
worksheet showing loss calculations as a result of a compromised email
database, and general records pertaining to Matthew Keys. SA Cauthen
reviewed the loss calculation worksheet and asked for clarification on
various issues.  DelCore provided the following clarifications:

1) Mr. Kersting was the CEO of Tribune in December 2010.  He
requested updates from DelCore on a regular basis following the compromise
of the email database in December 2010. Mr. Schonbak was the Chief
Operating Officer for Tribune at the time.  He was based in San Diego and
also required updates.

2) Greenlinks is the name of the database which was compromised.
Greenlinks was a contact list of customers used used as a marketing and
revenue generating database by FOX40 News.  Customers who were part of the
database also provided credit card numbers and other information in
addition to just their email address.  When customers made purchases using
the credit cards, FOX40 received a portion of these revenues.  When the
database was compromised people cancelled their participation.  After the
database was compromised, it took three years to rebuild.

3) For the Ipad contest, there was a loss of $15,000 as a result of
the compromise.  Part of this was ill will generated as a result of the
compromise.

4) The net loss of $200,000 was calculated at $10.00 per customer.


| | | |
|---|---|---|
| Investigation on | 12/19/2014 | at  Sacramento, California, United States (In Person) |
| File # | 288A-SC-45485, 288A-LA-258500 | Date drafted  12/22/2014 |
| by | CAUTHEN JOHN M | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

288A-SC-45485

Continuation of FD-302 of  Interview of Jerry Del Core                    , On   12/19/2014  , Page   2 of 2

5) The current revenue loss was based on the fact that FOX40 would
sell air time to advertisers. As part of this, FOX40 would send messages to
the database. The $25,000 figure was the calculation of revenue loss from
being able to send messages.  Also, the station sold directly via the
database.  For example, customers purchased "golf cards" for $2,500 which
enabled them to play at various golf courses.  This revenue stream went
away when the database was compromised.

6) News ratings actually declined as a result of the compromise.
This happened because the database provided an incentive for customers to
watch the news.  When the database went away, the motivation for the
audience to watch also went away and ratings declined accordingly.  At the
time, the market was valued at $163 million. A 1% share amounted $1.6
million.

7) After the compromise, FOX40 had to rebuild the database.  Out of
the original 20,000 accounts in the database, only 1,000 were retained as
the database had to start anew. It took three years to build it back up to
its prior level.

8) Taking everything into account, the loss was $929,977.00. Del Core
felt this estimate was conservative.

**Valuation on time/disruption of business**

**Meetings**

| | | | |
|---|---|---|---|
| 1.) | Brandon & John Cauthen | 1 | $75.00 |
| 2.) | Jerry, Brandon & Cauthen | 1 | $225.00 |
| 3.) | Jerry and Cauthen | 1 | $150.00 |
| 4.) | Jerry with Brandon | 5 (1/2 hour meetings) | $562.50 |

**Emails**

| | | | |
|---|---|---|---|
| 1.) | Brandon to John Cauthen | 1/1 + research | $225.00 |
| 2.) | Sam Cohen w/ corporate | 14 emails from 12/6/22010 thru 12/14/2010 | $700.00 |
| 3.) | Brandon to Chuck Sennet | 3 emails/FOX Mulder emails/FBI (5 emails) | $975.00 |
| 4.) | Brandon to Jerry | Draft for approval/FOX Mulder Court Docs/FOX Mulder Emails/Santa's Lap/iPad Contest | $1,125.00 |
| 5.) | Sam to News Managers (8) | FOX Mulder Court Documents | $450.00 |
| 6.) | Brandon to Jerry, News Mgrs, Charlier, Gable, Sennet and Saunders FOX Mulder update | | $1,425.00 |
| 7.) | Brandon to Gable, Cauthen, Sennet, Kersting | 3 emails | $6,015.00 |
| 8.) | Brandon to Jerry, Gable, Jedlinski and Sennet | Cancer Man aka FOX Mulder/Cancer Man Update | $1,475.00 |
| 9.) | Jerry to Kersting and Schonbak | 1/1/1 | $3,450.00 |
| 10.) | Cancerman4099 to Brandon | 20+/too many Thread of 20 emails include Brandon & FOX Mulder, Joseph Huerta to FOXMulder4099 | $1,550.00 |
| 11.) | FOXMudler4099 to Brandon | Santa's Ear/iPad Contest/ | $150.00 |
| 12.) | Brandon to Jerry and Ray Nelson | | $275.00 |
| 13.) | Brandon to Ray | Try to block access to all others | $125.00 |
| 14.) | Viewer emails | Initiated a chain of 4 emails + conversations 4 hours estimated in meetings | $1,500.00 |
| 15.) | Jedlinski to Brandon | | $325.00 |
| 16.) | Brandon to Jerry, Friedman, Saunders, Conhain, Bernard, Nelson, Silverman and Jedlinski "This is what FOX Mulder is doing to us" | | $1,025 |
| 17.) | Mohanani to Brandon | Viewer email – FOX40 sold my info! | $75.00 |
| 18.) | Brandon to News Department and Department Heads | | $850.00 |
| 19.) | Brandon to News Department and Jerry | | $2,500.00 |
| 20.) | Troy to Brandon | "30 minutes spent with upset viewers"/impact Kathy Paez & Bhavisha Patel/+1 | $200.00 |
| 21.) | Troy to News Department | | $150.00 |
| 22.) | Huerta to FOX Mulder | | $50.00 |
| 23.) | FOX Mulder to Jerry | | $150.00 |
| 24.) | Charles Bernard to Brandon | | $125.00 |

25.)FOX Mulder emails to Jordan DeNoon, Josh Baar, Mark Demsky, Bill Hudson, Charles Bernard, Tim King and Brandon RE: Santa's Lap email                                    $375.00

**Phone calls**

| | | | |
|---|---|---|---|
| 1.) | FOX40 Rewards Members | 21 (1/2 hour each on average) | $787.50 |
| 2.) | Brandon with Cauthen | 1 hour ? | $75.00 |
| 3.) | Brandon with Keys | 4 hours ? | $300.00 |
| 4.) | Jerry with Kersting and Schonbak | 2 (1/2 hour) | $1,150.00 |
| 5.) | Jerry with Schonbak | 5 (1/2 hour) | $1,625.00 |
| 6.) | Jerry with Cauthen | 4 (1/2 hour) | $150.00 |

**Greenlinks Database loss**

1.) iPad Contest                                           Estimated loss: $15,000.00
2.) Database impact
        lost database of 20,000 viewers; had to find a new vendor & rebuild a new database.
                                                          Estimated loss: $200,000.00

**Financial impact of Database loss**

Current revenues                                       Estimated loss: $25,000.00

Forward revenues                                       Estimated loss: $250,000.00

        Note: Took three (3) years to build new database back to 2011 level of 20,000 viewers

**Rating impact**

News ratings A2554                    Morning news declined .1 (5 hours)

                                      Early news declined .4 (1/2 Hour)

                                      Late news increased .2 (1 hour)

**Financial impact of rating decline**

Financial Impact                     Total market revenue = $163,875,000

                                     1% = $1,638,450

                                     .1% = 163,845

                                                Estimated  loss: $409,612.00

                                                (from am news rating losses)

MKP-0102060

(-.4 early news and +.2 late news effectively cancel each other out)

# Total Loss estimate:   $929,977.00

**Values of Manager time usage:**

1.) Sr. Executives        $500/hour
2.) Sr. Managers          $250/hour
3.) General Manager       $150/hour
4.) Staff Managers        $75/hour
5.) Staff Employees       $50/hour

MKP-0102061

# Exhibit 1003


OFFICIAL RECORD
Document participants have digitally signed.
All signatures have been verified by a
certified FBI information system.

## FEDERAL BUREAU OF INVESTIGATION

Date of entry     03/08/2016

    JASON JEDLINSKI, former employee of Tribune Interactive (TI), was
interviewed via telephone from the United States Attorney's Office for the
Eastern District of California. Present for the interview were FBI Special
Agent (SA) Christopher Dill and Assistant United States Attorney (AUSA)
Matt Segal.  After being advised of the identity of the interviewing Agent
and the nature of the interview, JEDLINSKI provided the following
information:

    MATTHEW KEYS was previously employed at FOX40 media as a site
administrator. His responsibilities included the creation, editing, and
managing of FOX40 web content, including webpage layouts. KEYS was able to
publish content to FOX40 from other websites, but was not directed to edit
any content on those other sites. Also during his employment, KEYS had the
authority to create user accounts for employees of FOX40. The web manager
delegated this authority to KEYS. At the time, only two or three employees
per Tribune property had the authority to create users for that particular
entity. Therefore, only two or three people at most at FOX40 could create
other FOX40 users on the Content Management System (CMS).

    JEDLINSKI provided that during KEYS employment and having the authority
to create users, he would have accessed the webpage that allowed the
creation of administrators, also known as super-users. The Uniform Resource
Locator (URL), also known as a webpage, that created super-users was an
obscure link on the CMS. JEDLINSKI stated that this link cannot be found by
normal search queries, but known to those who have visited the URL with
appropriate access authority. The URL, at the time, was exposed to 'open'
internet. JEDLINSKI explained this meant the URL/webpage didn't require
authentication for someone who went directly to this link. To expand
further, he stated that no normal users of the CMS system would have known
this URL or been able to find it by searching. KEYS had direct access to
this URL because he had the authority to create accounts for FOX40 media.

---

Investigation on   03/07/2016   at   Sacramento, California, United States (Phone)

File #   288A-SC-45485                                    Date drafted   03/07/2016

by   Christopher Jared Dill

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

# Exhibit 1004

# Time Comparison Between Tribune Server Logs, Overplay Logs, and IRC Logs

- 80.74.135.87 - 08/Dec/2010:17:57:04 - 0800] " POST /access/savegroups.ldap HTTP/1.1" 200 578 "https://assembler.tribuneinteractive.com/access/editgroups.ldap?username=anon1234" "Mozilla/5.0 (Macintosh; U; Intel Mac OS X 10.6; en-US; rv:1.9.2.8) Gecko/20100722 Firefox/3.6.8

- UserName | NASIPAddress | AcctStartTime | AcctStopTime | FramedIPAddress | CallingStationId
  keysjom | 80.74.135.87 | 2010-12-09 01:31:39 | 2010-12-09 03:57:46 | 10.12.0.10 | 75.53.168.11

- 08/Dec/2010:17:57 Los Angeles Time       AESCracked: It takes a while to grant one username permission to every site
- 08/Dec/2010:17:57 Los Angeles Time       AESCracked: Im doing that now.
- 08/Dec/2010:18:00 Los Angeles Time       AESCracked:yes, those are the three cms that this user/pass gives access to
- 08/Dec/2010:18:00 Los Angeles Time       AESCracked:user: anon1234
- 08/Dec/2010:18:00 Los Angeles Time       AESCracked:pass: common2
- 08/Dec/2010:18:01 Los Angeles Time       AESCracked: go fuck some shit up!

# Exhibit 1005

FD-302 (Rev. 5-8-10)

OFFICIAL RECORD
Document participants have digitally signed.
All signatures have been verified by a
certified FBI information system.

## FEDERAL BUREAU OF INVESTIGATION

Date of entry     01/07/2015

     Andy Soto, _____, telephone _____, email
_____ was interviewed telephonically.  After being advised
of the identity of the interviewing agent and the nature of the interview,
Soto provided the following information.

     In late 2010, Soto registered at the FOX40 website.  He registered with
his name, his address, and his telephone number.  However, he does not
believe he provided his credit card. After registering, he received a
strange email which indicated to him that his information had been
compromised.  He emailed FOX40 News to express his discontent and received
back a generic reply apologizing. After that, Soto took no action since the
damage had already been done.

     However, Soto never participated in any more FOX40 promotions and his
viewing of FOX40 News decreased, in part, due to this incident.  Soto
opined that as a result of this incident the credibility of the station
went down in his eyes, and thus the station did not warrant his continued
viewership.

     Soto maintained all of his emails from the incident and will provide
them upon issuance of a trial subpoena.

Investigation on     01/06/2015     at   Sacramento, California, United States (Phone)

File #   288A-SC-45485, 288A-LA-258500                          Date drafted   01/06/2015

by   CAUTHEN JOHN M

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

MKP-0102064

# Exhibit 1006



OFFICIAL RECORD
Document participants have digitally signed.
All signatures have been verified by a
certified FBI information system.

UNCLASSIFIED//FOUO

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry      01/07/2015

Shaun Davis, DOB [        ], email [              ], was interviewed
telephonically at [            ].  After being advised of the identity of the
interviewing agent and the nature of the interview, Davis provided the
following information.

In 2010, Davis had provided his email address to FOX40 News in the hopes of
winning prizes by watching the news station.  On about 12/1/2010, he
received a suspicious email purporting to be from FOX40 News.  Davis was
suspicious that it was a scam, and thought the station had been hacked.
After that, he did not trust the station any more because he thought his
information was vulnerable.  He declined further participation in the
program.

UNCLASSIFIED//FOUO

Investigation on   01/06/2015   at   Sacramento, California, United States (Phone)

File #  288A-SC-45485, 288A-LA-258500                    Date drafted  01/06/2015

by   CAUTHEN JOHN M

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

MKP-0102050

From: FOX40 Sacramento <foxmulder4099@gmail.com>
Date: December 1, 2010 9:35:55 PM PST
Subject: iPad Festivus Giveaway


You recently registered your e-mail address on <http://FOX40.COM> FOX40.COM to
win one of fifteen Apple iPads.


Check your e-mail tomorrow for a very important, very special message.

For more information, call the newsroom at 916-454-4548.

1

Read This to
Davis   - Numbers

MKP-0102052

# Exhibit 1007

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| MATTHEW KEYS | ) | Case No.  2:13-CR-0082-KJM |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To:   Tribune Media Company
      c/o Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N
      Sacramenta, CA 95833

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: | U.S. Courthouse 501 I Street Sacramento, CA 95814 | Courtroom No.: | Courtroom 3, 15th Floor |
|---|---|---|---|
| | | Date and Time: | 9/28/2015 9:00am |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

See Attached Exhibit A

*(SEAL)*

Date:   _____

*CLERK OF COURT*

_____
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Matthew Keys
_____ , who requests this subpoena, are:

Tor Ekeland
Tor Ekeland, P.C.
195 Plymouth Street, 5th Floor
Brooklyn, NY 11201
Tel:  718.737.7264
Fax: 718.504.5417
Email: tor@torekeland.com

Case No.   2:13-CR-0082-KJM

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**EXHIBIT A**

**SUBPOENA AD TESTIFICANDUM TO TRIBUNE MEDIA COMPANY**

Dear Mr. Lazarus or other Custodian of Records:

Please provide the relevant items related to the definitions, instructions, and requests below, including the name(s) of witness(es) that can authenticate and testify to the authentication of the items produced in response to this subpoena.

Except as otherwise requested, this request is only for documents and objects as they existed between October 28, 2010 and January 5, 2011, and is only for documents and objects related to the events described in the attached indictment. (*See* Ex. B.)

Please provide a privilege log for all items that are being withheld on the basis of privilege. Defense counsel also requests that when available the subpoenaed party provide the below requests in native format:

**DEFINITIONS**

1.      "All" and "any" both mean "any and all."

2.      "Communication" or "communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise), whether orally, on electronic or facsimile transmission, or in writing, or by any other means or medium, regardless of whether maintained in hard copy.

3.      "Document" and "documents" shall have the broadest meaning permitted by the Federal Rules of Civil Procedure and any applicable local rule of court and include, without limitation, all writings or recordings of data or information of any nature whatsoever, including, without limitation, originals, drafts, revisions and non-identical copies thereof, and any other data or information that exists in electronic form from any source or media whatsoever, including but not limited to any computers, cell phones or personal digital assistants or smart

phones.  "Document" and "documents" also include without limitation emails and other forms of electronic communication (such as deleted emails, instant messages, text messages, MMS messages, SMS messages, Bloomberg messages, Twitter messages and any communication via social or professional networking sites or systems), as well as voicemail.

**INSTRUCTIONS**

1.      In responding to this request, you shall produce all documents in your possession, custody or control, including documents and materials in the possession of your employees, agents, servants and/or representatives.

2.      If any portion of a document is considered responsive to any request, the request shall be construed as requesting production of the entire document.

3.      Documents shall be produced as they are kept in the usual course of business.

4.      Any document that contains any notation, addition, insertion, or marking of any kind is not deemed to be identical to one without such marks, and is to be produced as a separate document.

5.      Whenever a document has been withheld because the request is objected to on grounds of privilege, work product or confidentiality or any other grounds:

(a)      identify the document;

(b)      describe the nature of the document (e.g., letter, chart, memorandum);

(c)      identify the privilege and any statute, rule or decision upon which you rely in withholding the document and state the factual basis supporting the privilege claimed;

2

      (d)      set forth each request to which each such document is responsive;

      (e)      state the date of the document;

      (f)      describe the subject matter of the document;

      (g)      identify the author(s), the recipient(s) and all person(s) who received copies of the document; and

6.      If part of an otherwise responsive document contains information that is subject to a claim of privilege, those parts of the document subject to the claim of privilege shall be redacted from the document, the redacted parts shall be clearly marked as such, and the rest of the document shall be produced.

7.      Each of these requests seeks all documents, wherever located, which are in your actual or constructive possession, custody or control, as well as all documents which are known to exist and can be obtained by you from any other source.

## DOCUMENTS REQUESTED:

### I. L.A. Times's and/or Tribune Media Company's Content Management System

1. Access logs from L.A. Times's and/or Tribune Media Company's content management system ("CMS"), including the portions already produced by the government, covering the period of October 28, 2010 and January 5, 2011 (the "Time Period").

2. Any other alleged unauthorized access or code transmission attempts on L.A. Times's and/or Tribune Media Company's CMS that occurred during the Time Period.

3. Activity logs of L.A. Times's and/or Tribune Media Company's servers from the Time Period documenting the extent of the damage alleged in the indictment

4.  A full reproduction of the original L.A. Times article from December 14, 2010, as

    published, including information specifying when and where it was published, by

    who, and whether the article was an L.A. Times or a syndicated or news-wire

    article.

5.  A full reproduction of the restored L.A. Times article, including information

    specifying when and where it was published and who restored the article.

6.  Activity logs showing advertising metrics or analytics during the time period, and

    specifically from the page displaying the L.A. Times article from December 14,

    2010.

## II.  L.A. Times and/or Tribune Media Company's Email Access Logs

1.  Access logs from Tribune Media Company's email server covering Mr. Keys'

    Employment Period, up to his termination.

2.  Access logs from L.A. Times's and/or Tribune Media Company's email server

    covering the Time Period.

3.  Access logs from L.A. Times's and/or Tribune Media Company's email server

    covering the period of alleged "Fox Mulder" emails.

4.  Names of all L.A. Times's and/or Tribune Media Company employees involved in

    the response to the "Fox Mulder" emails.

## III.  L.A. Times and/or Tribune Media Company's System Logs

1.  System logs from L.A. Times and/or Tribune Media Company servers hosting the

    L.A. Times article or content shown on that article's page, showing server uptime,

    downtime, load, and alleged damage if any, from the Time Period.

2.  All logs of L.A. Times and/or Tribune Media Company servers hosting the L.A.

    Times article or content shown on that article's page, documenting article edits or

updates, downtime, slowdown, DoS, or other damage for a 36-hour period before

and after any alleged damage (including, for example: frontend/backend logs,

database logs, and email and web server logs for services allegedly interrupted or

damaged).

**IV.  L.A. Times and/or Tribune Media Company Information Security Measures**

  **1.**  Access logs and system/debug logs (to be provided in plaintext, if native format

  isn't readable as plaintext) from any relevant firewall or network security and

  intrusion detection system(s) showing the alleged breach of Tribune Media

  Company's or L.A. Times's systems.

  **2.**  All similar logs during the Time Period from any third-party service provider (e.g.

  Cloudflare) documenting the alleged attempted breach of L.A. Times's and/or

  Tribune Media Company's systems.

  **3.**  L.A. Times and/or Tribune Media Company's written and/or enforced policies on

  internal password strength, access control, and authorization revocation used at

  KTL Fox40 or L.A. Times during the Time Period.
  Any other L.A. Times and/or Tribune Media Company internal written or

  enforced security policies used at KTL Fox40 or L.A. Times during the Time

  Period.

  **4.**  Any changes to L.A. Times and/or Tribune Media Company internal written or

  enforced security policies used at KTL FOX40 or L.A. Times made within one

  year of the Time Period.

  **5.**  The names of anyone involved with the response to the alleged breach of the L.A.

  Times and/or FOX40 CMS. Please include specific details about who restored the

  article in response to the edit, and who was operating the CMS during that time.

**V.  L.A. Times and/or Tribune Media Company Business Records**

1. A list of services that were damaged as a result of the alleged breach of L.A. Times and/or Tribune Media Company's systems.

2. A list of any data lost or damaged as a result of the alleged breach of L.A. Times and/or Tribune Media Company's systems.

3. A list of user accounts that were damaged or compromised as a result of the alleged breach of L.A. Times and/or Tribune Media Company systems during the Time Period.

4. L.A. Times's and/or Tribune Media Company's IT backup retention policies, procedures, schedules, tape usage cycle, and Incident Response policies and procedures in place during the Time Period, and from one year before and one year after if such policies differ from the one in place during the Time Period.

5. Records showing ad revenue from online articles during the Time Period

6. Records showing ad revenue from the December 14, 2010 L.A. Times article.

7. All metadata and the content of any calls or emails received by L.A. Times's and/or Tribune Media Company's IT help desk during the Time Period from end users seeking assistance because of the alleged breach.

8. Documents and objects showing the chain of custody and authentication of all electronically stored information ("ESI"), including relevant emails, CMS logs, server logs, and internet relay chat ("IRC") logs.

9. Documents and objects relevant to the allegations of damage and loss, e.g. invoices from third-parties that investigated the events alleged in the indictment, purchase orders from L.A. Times and/or Tribune Media Company documenting the loss it suffered caused by the alleged damage.

10. All information related to logs from any server, router, switch, or any other network device operated by Tribune Media Company or its subsidiaries through

which any computer signals related to the Time Period and the events described in

the indictment traveled.

**VI.   Correspondence**

    **1.**  All communications with the Department of Justice regarding this case or

    Matthew Keys.

    **2.**  All communications with the Federal Bureau of Investigation regarding this case

    or Matthew Keys.


Sincerely,

*/s/* Tor Ekeland

Tor Ekeland

**Tor Ekeland, PC**

195 Plymouth Street, 5th Floor

Brooklyn, New York, 11201-1133

Phone:  (718) 737-7264

Email:  tor@torekeland.com

*Pro Bono Attorneys for Defendant Matthew Keys*

**EXHIBIT B**

**INDICTMENT**