PHILLIP A. TALBERT
Acting United States Attorney
PAUL HEMESATH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:13-CR-00082-KJM |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO SECOND MOTION FOR RECONSIDERATION |
| v. | DATE: July 19, 2021 |
| MATTHEW KEYS, | TIME: 9:00 a.m. |
| Defendant. | COURT: Hon. Kimberly J. Mueller |

This Court correctly found that Matthew Keys violated the terms of his supervised release by deleting Comstock's catalog of YouTube videos. The Supreme Court's decision in *Van Buren v. United States* has no effect on this Court's decision because Keys was charged under 18 U.S.C. § 1030(a)(5)(A), which criminalizes damage to a computer system.[1] *Van Buren* interpreted Subsection (a)(2) of Section 1030, which applies when a user exceeds authorized access. 593 U.S. ___ (2021). Because Keys deleted data—a opposed to just accessing it—the Supreme Court's *Van Buren* decision is not relevant to this matter.

Keys attempts to conflate Subsection (a)(2) with Subsection (a)(5)(A) by claiming that "the language is identical" and arguing that *Van Buren* must mean that his deletion of the YouTube catalog was not an illegal act. Def. Br. at 3. But this is demonstrably wrong when his argument is compared

---

[1] The government filed an opposition to Keys's first motion for reconsideration. Dkt. No. 229. The instant pleading addresses *Van Buren*'s lack of applicability to Keys's violation. The government reiterates the arguments contained in the original opposition and its post-hearing brief.

1

against: (I) the text of *Van Buren*, (II) the text of the statute, (III) other case law analysis, (IV) the legislative history, and (V) scholarly analysis of the issue.

## I. The facts of *Van Buren* are patently distinguishable from cases involving deletion data and Keys's conduct in this case.

While the *Van Buren* court did narrow the scope of conduct made illegal by Subsection (a)(2), the holding does not touch Keys's behavior here.  This is demonstrable, in part, by comparing the facts in *Van Buren* to what Keys did in this case.

Nathen Van Buren was a police officer who had authorization to access a police-department computer holding license-plate data.  *Van Buren*, 593 U.S. at 3.  On one occasion, Van Buren accessed the computer for the purpose of selling license-plate data to a person who turned out to be an informant.  *Id.*  The government alleged that, although Van Buren was permitted to access the database as part of his job, he exceeded his authorization to do so by selling that data to another person, which was contrary to department policy.  *Id.* at 4.  Therefore, the government argued, Van Buren had violated subsection (a)(2) of Section 1030, which prohibits a person from accessing data in excess of authorization.

The Supreme Court disagreed, holding that Van Buren's improper purpose and violation of department policy could not overcome the fact that he was in fact authorized to access the license-plate data.[2]  The Court observed that, under Subsection (a)(2), "an individual exceeds authorized access when he accesses a computer with authorization but then obtains information…that are off limits to him." *Id.* at 4.  Because Van Buren possessed valid access to the database, he did not "exceed access" in violation of Subsection (a)(2) of Section 1030.

But the facts of the present case are not that Keys merely accessed YouTube data, as Van Buren did.  This Court found that Keys deleted the Comstock's YouTube catalog.  Dkt. No. 223 at 7-8.  The act of destroying data places Keys's conduct in a different category under Section 1030—Subsection (a)(5)(A), which prohibits the intentional damage of a computer without authorization.  Petition for Warrant, Dkt. No. 185, p. 2 (providing notice to Keys that he is accused of violating a new law: 18 U.S.C. § 1030(a)(5)(A), which prohibits damage to a computer).

---

[2] The holding provides other analysis, including the definition of the phrase, "not entitled so to obtain," in relation to the term "exceeds authorized access," but that part of the opinion is not relevant to the difference between Subsections (a)(2) and (a)(5)(A).  *See id.* at 5.

1   Under Subsection (a)(5)(A) (as opposed to (a)(2)), it does not matter whether the defendant had

2   access to the system—it only matters whether they had authorization to cause the damage.  Without

3   Subsection (a)(5)(A), employees could delete or damage their employers' systems so long as they had

4   access to the systems they harmed.  For someone accused of Subsection (a)(5)(A), as Keys is, having

5   access is not a defense to the intentional destruction of data.  *See United States v. Thomas*, 877 F.3d 591,

6   595-600 (explaining how merely having access to system is not a defense to data destruction under

7   Subsection (a)(5)(A)).

8   The *Van Buren* case is further distinguishable in that Van Buren did not destroy data—he was

9   only accused of accessing data in excess of authorization.  *See Van Buren*, 593 U.S. at 3-4.  Predictably,

10  the Supreme Court holding does not mention Subsection (a)(5)(A) nor the concept of data destruction.

11  *Id.* at 1-20.  Instead, the Court devoted its analysis to the controversy before it—whether Van Buren

12  could be accused of exceeding access to a database that everyone agreed he was allowed to access.

13  Keys's acts are in a different plane of existence—he was an ex-employee without access, and he was not

14  just accessing data—he was destroying it.

15  **II.    The text of the statute shows the difference between what was considered in the *Van Buren***

16  **decision and what Keys did in this case.**

17  The Supreme Court's lack of attention to Subsection (a)(5)(A) in the *Van Buren* decision is

18  consistent with the clear differences in language from Subsection (a)(2).

19  Subsection (a)(2) prohibits:

20          intentionally access[ing] a computer without authorization or exceed[ing]

21          authorized access, and thereby obtain[ing] . . . information from any
            protected computer.

22

23  18 U.S.C. § 1030(a)(2).

24  In contrast, Keys is charged destroying data under Subsection (a)(5)(A), which prohibits:

25          knowingly cause[ing] the transmission of a program, information, code, or
            command, and as a result of such conduct, intentionally caus[ing] damage

26          without authorization, to a protected computer.

27  18 U.S.C. § 1030(a)(5)(A).

28  The difference between the two subsections is manifest: Subsection (a)(2) prohibits a person

from accessing a computer in excess of authorization.  Subsection(a)(5)(a) does not mention access, but prohibits a person from damaging of a computer, unless they have authorization to do so.  In practice, this means that even someone possessing valid access (e.g., an employee with credentials) is not permitted to cause damage, unless that person is specifically authorized to cause that damage.  For Keys, it means that even a weak allegation that he had "access" is not a valid defense if he deleted data.  It also means the definition of "exceeding access"—the point of *Van Buren*—is irrelevant when data deletion is alleged under Subsection(a)(5)(a).[3]

### III.   Case law interpreting Subsection (a)(5)(A) also recognizes that authorized access is not a defense to unauthorized deletion.

At least one circuit court has recognized that Subsection (a)(5)(A)-damage is completely distinguishable from the Subsection (a)(2)-unauthorized-access.  In *Thomas*, the Fifth Circuit explained that a disgruntled employee could not use his valid access to computer systems as a defense to damaging his company's data.  *See United States v. Thomas*, 877 F.3d 591 (5th Cir. 2017).  While Thomas was still an employee (thus enjoying credentialed access), he deleted files, diverted emails, and otherwise damaged his company's computers in retaliation for the company's dismissal of a co-worker.  Only after he inflicted the damage, he resigned.  Later, he argued that because he had "access" and his IT job required that he occasionally delete files, he could not have violated Subsection (a)(5)(A).

The Fifth Circuit disagreed and provided ample reasoning for doing so.  That Court concluded that the phrase "without authorization" in Subsection (a)(5)(A) modifies "damage" rather than "access."  Subsection (a)(5)(A) therefore "covers situations when the individual never had permission to damage the system (an outsider) *or* when someone who might have permission for some damaging acts causes other damage that is not authorized (an insider)."  *Id.* at 596.  As a result, Thomas's argument that his employee access "authorized" him to delete whatever he wanted was rejected.

For Keys's defense (that Ms. Comstock had somehow granted him access, even after he separated from the company) to work under Subsection (a)(5)(A), it is not enough to show that she authorized him to access the YouTube control panel.  He would have to show that someone (with authority) specifically authorized him to destroy those videos.  While the government continues to

---

[3] This Court recognized this distinction in its original Order in this case but with regard to the *Nosal* case.  The analysis distinguishing *Van Buren* is the same.  Dkt. No. 223 at 9-10.

dispute that Keys had any access at all[4], there is no evidence or argument whatsoever that anyone authorized Keys to delete the Comstock's YouTube video catalog.[5]  As a result, the notion that Keys somehow had access to the YouTube video system is irrelevant, and *Van Buren* does not help Keys's effort to find a defense to Subsection (a)(5)(A).

## IV.    The legislative history of the CFAA confirms that having access is not a defense to unauthorized data deletion.

The drafters of the Computer Fraud and Abuse Act (also known as the CFAA or Section 1030) wrote Subsection (a)(5)(A) with the idea that data-damage should be made illegal whether the actor was authorized to access a system or not:

> The bill amends subsection 1030 (a)(5) to further protect computers and computer systems covered by the statute from damage both by outsiders, who gain access to a computer without authorization, and by insiders, who intentionally damage a computer.

S. REP. 104-357, 9.  The Senate Report thus makes clear that both insiders[6] and outsiders[7] (those with and without authorized access) are criminally responsible for deleting data without authorization under Subsection (a)(5)(A).  In other words, Congress intended to put data-damagers in a separate category from access-exceeders.  Accordingly, even if Keys was authorized to access the files, his decision to delete them is punishable under the law.

## V.    Scholarly analysis confirms that deletion is different.

Professor Orin Kerr[8] proposed a hypothetical scenario that is strikingly similar to the conduct in this case.  The answer to the hypothetical, adopted by the *Thomas* court, concludes that a current employee with "access" is still in violation of Subsection (a)(5)(A) when they damage a computer, even if they are not in violation of unauthorized access statutes:

---

[4] The record shows that Keys had quit well before the deletions occurred.

[5] This Court concluded: "No evidence suggests anyone at the magazine wanted to delete the YouTube channel or would have agreed that Keys could do so.  Rather, the opposite is true."  Dkt. No. 223 at 9.

[6] Keys suggests that he was "inside" in this scenario as a result of unproven and specious claims that Ms. Comstock gave him post-employment access.  *See* Def. Br. at 5.

[7] The government continues to argue that after Keys quit, he was unequivocally an "outsider" because he was not authorized to access the system.

[8] Professor Kerr was also cited throughout the Supreme Court's *Van Buren* decision.  *See Van Buren*, 593 U.S. at 2, 13, 18, and 19.

1

Employee sabotage: Sam is a computer programmer who is angry at his employer for denying him a promotion. Sam decides to take revenge by deleting some of his employer's important files, and by launching a denial-of-service attack that overwhelms his company's webserver with requests and takes it offline for a few hours. The deletion of the files will not constitute an unauthorized access. Sam accessed his employer's computer when he used it to delete files, but as a programmer he was authorized to access those files and therefore has not committed access without authorization. Similarly, the denial-of-service attack will not itself constitute an unauthorized access crime. Sending the data to the computer does access the computer, but the access is not without authorization: The webserver has been configured to accept all web traffic requests, such that sending many requests will not circumvent any code-based restrictions.

2

3

4

5

6

7

8

Sam does not avoid criminal liability, however. The deletion of the files may constitute destruction of property or conversion and, depending on the applicable state laws, he could be prosecuted under general property crime statutes. *Sam could also be prosecuted for damaging the computer under the federal computer damage statute, 18 U.S.C. § 1030(a)(5)(A)(i).*

9

10

11    *See United States v. Thomas*, 877 F.3d at 599 *citing* Orin S. Kerr, Cybercrime's Scope: Interpreting

12    "Access" and "Authorization" in Computer Misuse Statutes, 78 N.Y.U. L. Rev. 1596, 1664–65 (2003)

13    (emphasis added).

14         Had the government charged Keys under Subsection (a)(2) for unauthorized access then

15    questions regarding his access to the YouTube videos might be relevant to determine whether—like the

16    defendant in *Van Buren* or Sam in the hypothetical—Keys's access was properly defined.  But Keys was

17    not charged under Subsection (a)(2), and his unauthorized deletion of data in violation of Subsection

18    (a)(5)(A) should obviate any need to consider whether he had access or not.

19                                        **<u>Conclusion</u>**

20         The *Van Buren* holding puts Keys no further ahead than he was before the decision.  In the first

21    place, the government disputes that Keys possessed authorized access: he had unequivocally quit from

22    Comstock's, he wrote a letter explaining that he quit, and he told his Probation Officer that he had quit.

23    Keys responds by speculating—through inadmissible emails allegedly collected from a fictitious

24    person—that he must have possessed access that even he was not aware of.

25         But more importantly, Keys was charged under Subsection (a)(5)A)—the deletion of data—

26    under which it does not matter whether he had access.  He did not have authorization to delete the

27    videos.

28         Finally, as the Court observes on page 9 of its order, by deleting the data Keys also violated

California Penal Code section 502(c)(4).  Keys has not yet argued that he "had permission" to delete the YouTube videos, therefore he remains independently culpable on that basis.

For all of these reasons, Court should deny Keys's Second Motion for Reconsideration and proceed with disposition as scheduled.

Dated:  July 2, 2021

PHILLIP A. TALBERT
Acting United States Attorney


 /s/ PAUL HEMESATH
PAUL HEMESATH
Assistant United States Attorney