MARK REICHEL, State Bar #155034
455 CAPITOL MALL, 8th FLOOR, Suite 802
Sacramento, California  95814
Telephone: (916) 498-9258
FAX:       (888) 505-9331

mark@reichellaw.com
www.reichellaw.com

Attorney for Defendant
MATTHEW KEYS

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-S-13-82 KJM |
| Plaintiff, | BRIEF ON APPLICATION OF *VAN BUREN* OPINION TO THE CASE AT BAR |
| v. | |
| | DATE: July 19, 2021 |
| | TIME: 9:00 a.m. |
| MATTHEW KEYS | Judge: Hon. KIMBERLY J. MUELLER |
| Defendant. | |

KEYS DID NOT VIOLATE THE CFAA UNDER *VAN BUREN*

The government's view. The government's clear position is that any person who destroys/damages data from an employer's computer, unless specifically instructed to make the destruction/deletion, is guilty of a federal crime, specifically the CFAA, whether they are allowed "access" to the computer or not. Indeed, according to the government, the most minimal and de minimis damage to any data that a person has access to is the subject of criminal punishment in the federal system. Their position of criminalizing all such

Defense Reply Brief on *Van Buren* to case at bar

conduct of "insiders," as described by *Van Buren,* obliterates our constitution's bedrock principles of comity and federalism, and brings a tidal wave of new criminality into the federal system.[1]

To support the argument, the government cites to only one case--decided well before *Van Buren*, to legislative history, and to a law professor's opinion from 18 years before *Van Buren*.

<u>Factual recitation of import</u>. At the outset, it needs to be repeated that the evidentiary hearing established that Mr. Keys communicated his desire to resign to Mr. Couzens, but that shortly thereafter that day the owner of the company, Ms. Comstock-Carlson, sent Mr. Keys an email *refusing* to accept his resignation; she sent it to *his company email address* which conclusively establishes her desire to keep "the gates up." The defense tried unsuccessfully to have the company owner verify emails she wrote well after Mr. Keys was charged here, emails where she stated that she did not want Mr. Keys charged and that Mr. Keys still had access well after he expressed his desire to resign. The government, on the other hand, went to great lengths and effort to *not* ask her such a question.

---

[1] The government incorrectly believes that someone can be both an "outsider" and an "insider" when the government prosecutes them for a CFAA violation under (A)(5)(a). They are incorrect in their understanding of the Senate Report on that section. (Page 5 lines 12 and 13 of Gov. Opp. To Sec). The Senate Report clearly explains that "outsiders" are not covered by (A)(5)(a) but *now* creates coverage for "insiders." The government incorrectly states "The Senate Report thus makes clear that both insiders and outsiders are criminally responsible for deleting data without authorization under Subsection (A)(5)(a)." The report itself specifically states otherwise.

Defense Reply Brief on *Van Buren* to case at bar    2

<u>Case law: Thomas</u>. The government cites to the 2017 case of *Thomas*, which is the only case, published or unpublished, to address a similar issue. There is indeed no Ninth Circuit case on the government's position. The reasoning of *Thomas* does not survive *Van Buren* scrutiny.

"<u>Gates up or gates down</u>." The Supreme Court adopted an "anti hacking" holding as urged by Mr. Van Buren to the CFAA. The CFAA can only be applied to those persons where the "gates are down" to them. The language of (a)(2) and (5)(a) is identical. Van Buren was charged with:

(a) Whoever—

(1) having knowingly accessed a computer without authorization or exceeding authorized access;

and then Mr. Keys is charged as

(5) (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer.

Obviously, the "without authorization" language in (5)(a) is the same language as in (A)(1). Here is what *Van Buren* instructed:

> Van Buren's account of subsection (a)(2) makes sense of the statutory structure because it treats the "without authorization" and "exceeds authorized access" clauses consistently. Under Van Buren's reading, liability under both clauses stems from a gates-up-or-down inquiry—one either can or cannot access a computer system, and one either can or cannot access certain areas within the system. And reading both clauses to adopt a gates-up-or-down approach aligns with the computer-context understanding of access as entry. *See supra*, at 11-12."

*Van Buren* at 23-24. What this teaches is that the CFAA only

criminalizes instances where someone hacks in from the "outside" of the system, or where they are "inside" but not allowed to access *those specific files*. (*Id*.)(Italics added for emphasis.) Thus, the test remains one of whether the gates were "up" or "down." And in the facts here, it is unquestionable that Mr. Keys had authorized access- i.e. "gates open" - to these files: the YouTube accounts, as he was the manager of the YouTube files.

<u>Advanced Aerofoil Techs, AG.</u> There is a civil case contrary to *Thomas* that the defense references to this court. There, while persons were employees of company A, and then even after they were no longer with company A, they conspired with others who stayed at company A to then form a competitor company, company B. The persons, while still employed and also thereafter, as well as the other employees, destroyed data of company A. The case is *Advanced Aerofoil Techs., AG v. Todaro* (S.D.N.Y. Jan. 30, 2013) 2013 U.S.Dist.LEXIS 25711. The district court set forth how the facts there are very similar to the case at bar

> Here, Plaintiffs allege Defendants violated the CFAA by taking AAT's confidential and proprietary information for the benefit of Flowcastings and deleting information and data from AAT's computers and systems to cripple it as a competitor.....
>
> The allegations in this case require the Court to determine the meaning of "accesses a computer without authorization" under the statute. Taking all of Plaintiffs' factual allegations as true, the pivotal inquiry is whether Todaro, Chalder, Tarby, Konrad, and/or Leonhardt were accessing or transmitting programs to their AAT computers without authorization as defined by Sections (a)(2)©, (a)(4), (a)(5)(A) and (a)(5)©. There is no analysis in this decision of whether Defendants "exceeded authorized access", even though the

> CFAA recognizes exceeding authorized access as an alternative to accessing a computer without authorization, because there are no allegations that AAT gave any of the Defendants something short of unlimited and unfettered access to its systems.

In contrast to the holding of *Thomas*, but in predicting the eventual outcome of *Van Buren*, the district court then explained

> Like Plaintiffs' first argument, there are no allegations that Todaro and Leonhardt deleted data or emails from their computers after AAT terminated their authorization to use its systems and equipment. In that respect, the instant case is plainly distinguishable from *Dedalus*. The language of Section (a)(5)(A) requires the alleged conduct — in this instance, the transmission of a program, information, code, or command — must be done "without authorization". Again, Plaintiffs offer no facts to satisfy this requirement. The Court finds Plaintiffs' reliance on *Dedalus* is misplaced because AAT has failed to allege Defendants transmitted a program deleting confidential information from AAT's computers "without authorization" as required by the statute. Accordingly, Plaintiffs' CFAA claim is DISMISSED.

*Advanced Aerofoil Techs., AG.*

The facts here are identical.

<u>"Outsider" has been the government's theory</u>. The government's theory throughout the case has been that Mr. Keys was an "outsider", although not using that term before *Van Buren* was decided. They still take that position. (FN7) The Court weighed the evidence based on that theory as well. Thus, the "gates up or down" test applies.

<u>Even as an "Insider" there is no violation</u>. If the Court finds that Mr. Keys was an "insider" at the time of the alleged deletion, 1030(a)(5)(A), the Government cannot satisfy that the alleged deletion was "without authorization" because:

Defense Reply Brief on *Van Buren* to case at bar     5

    \* His job responsibilities at Comstock's involved managing the YouTube channel, which required uploading, publishing and removing videos; there was no restriction on this responsibility during his time at Comstock's.

    \* There is no evidence Comstock's took a substantial step to cut off access to the YouTube account in question.

    \* The emails proffered by the defense become of paramount importance because Ms. Comstock-Carlson affirmed a desire for Mr. Keys to continue to have account access, just as prior employees did. These are proffered e-mails authenticated by Tom Couzens and by the Government's own

    *Conclusion*: *Van Buren* requires that the "gates must be down" to a person, preventing them from accessing certain files-- either because they are an "outsider" with no access or an "insider" with prescribed/limited access. With regard to Mr. Keys, the gates were still up.

Dated: July 14, 2021

                              Respectfully submitted,

                              *Mark J. Reichel*

                              MARK J. REICHEL
                              ATTORNEY FOR DEFENDANT